

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-3-2006

# Singh v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 04-4261

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Singh v. Atty Gen USA" (2006). *2006 Decisions.* Paper 1688.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1688

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-4261

———

BHUPINDER SINGH,

Petitioner

v.

ALBERTO R. GONZALES,[1] Attorney General
of the United States; BUREAU OF IMMIGRATION
& CUSTOMS ENFORCEMENT; KENT FREDERICK,
District Director, Philadelphia District
Immigration and Customs Enforcement

Respondents

———

On Petition for Review from
the United States Department of Justice
Board of Immigration Appeals
(BIA No. A47 019 972)

———

Argued December 5, 2005

Before: RENDELL, FISHER, and VAN ANTWERPEN,
Circuit Judges.

(Filed: January 3, 2006)

Christine J. Sabas (Argued)

———

[1] Alberto R. Gonzales is substituted for his predecessor, John Ashcroft, as Attorney General of the United States, pursuant to Fed. R. App. P. 43(c)(2).

27 North Fifth Street
Lewisburg, PA 17837

Counsel for Petitioner

Peter Keisler, Assistant Attorney General, Civil Division
Mary Jane Candaux, Senior Litigation Counsel
Melissa Neiman-Kelting, Attorney (Argued)
Office of Immigration Litigation
United States Department of Justice
P.O. Box 878
Ben Franklin Station
Washington, D.C. 20044

Counsel for Respondent

———

OPINION OF THE COURT

———

VAN ANTWERPEN, <u>Circuit Judge</u>.

Petitioner, Mr. Bhupinder Singh, seeks review of the decision of the Board of Immigration Appeals ("BIA") determining that he is removable as an aggravated felon under 8 U.S.C. § 1227(a)(2)(A)(iii), and a subsequent BIA decision affirming without opinion the denial by the Immigration Judge ("IJ") of his claims for withholding of removal and protection under the Convention Against Torture ("CAT"). We will deny the petition.

I.

Singh is a native and citizen of India who immigrated to the United States in 1999, and obtained lawful permanent resident status. On January 30, 2001, Singh was driving in Lancaster County, Pennsylvania. When another motorist made an obscene gesture at him, he responded by pointing a BB gun at the driver. Local police pulled him over and arrested him based on the incident. He was charged, in relevant part, with simple assault under 18 Pa. Cons. Stat. Ann. § 2701(a)(3), and recklessly endangering another person under 18 Pa. Cons. Stat. Ann. § 2705. On August 21, 2001, Singh pled guilty to, and was

1

convicted of, both offenses in the Lancaster County Court of Common Pleas.

As a result of these convictions, on September 15, 2001, the then-Immigration and Naturalization Service[2] ("INS") served Singh with a Notice to Appear charging him with removability under sections 237(a)(2)(A)(i) and (iii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1227(a)(2)(A)(i) & (iii). Section 1227(a)(2)(A)(i) renders aliens removable if they have committed certain crimes involving moral turpitude, while § 1227(a)(2)(A)(iii) provides for removal of aliens who have committed an aggravated felony as defined in INA § 101(a)(43), 8 U.S.C. § 1101(a)(43). Singh moved to terminate his removal proceedings on the basis that his convictions were neither crimes of moral turpitude nor aggravated felonies. On July 23, 2003, an IJ in Philadelphia, Pennsylvania determined that both crimes were aggravated felonies, but neither were crimes involving moral turpitude. The IJ denied Singh's motion to terminate removal proceedings and ordered him removed. He was then placed in detention in York, Pennsylvania. Accordingly, venue was changed to York.

Following the change of venue, Singh received a merits hearing at which a new IJ again determined that neither crime involved moral turpitude, but also that neither was an aggravated felony. The IJ accordingly terminated the removal proceedings against Singh on October 20, 2003, whereupon the INS appealed to the BIA. The BIA sustained the appeal on March 1, 2004, ruling that both crimes, simple assault and recklessly endangering another person, were aggravated felonies, thereby again rendering Singh removable. The BIA did not enter a final order of removal, but instead remanded the case to allow Singh opportunity to seek relief from removal by applying for withholding of removal and protection under the CAT.

At his June 3, 2004 hearing before the IJ, Singh presented his claims for withholding of removal and CAT relief. He claimed that as an ethnic Sikh, he would face persecution upon

---

[2] As of March 1, 2003, the functions of the INS were assumed by the Bureau of Citizenship and Immigration Services. *Soltane v. United States Dept. of Justice*, 381 F.3d 143, 145 n.1 (3d Cir. 2004).

return to India, and specifically, upon return to Punjab, a Sikh state within India. Singh testified that he feared arrest and loss of his life should he return to India, based on the fate of two uncles who had been members of the Akali Dal, a movement seeking an independent Sikh state. He called as a witness a third uncle who testified that the other uncles had been arrested in 1984. This third uncle also testified that he feared for Singh's safety in India because Singh would be likely to support the Akali Dal, and would be immediately recognizable as a Sikh because of his surname. The uncle conceded that Singh's parents had been members of the Akali Dal, but had never been arrested. The 2003 Country Report on India current at the time of Singh's hearing noted that the violence and disappearances in Punjab during the 1990s had ended, and that while some sporadic human rights abuses may still occur, they are sparse.

The IJ found that Singh had not shown a clear probability of persecution with respect to his claim for withholding of removal, nor, regarding his claim for CAT relief, that it was more likely than not that he would be tortured. Accordingly, the IJ ordered him removed to India.

On July 2, 2004, Singh filed an appeal with the BIA,[3] claiming that (1) the IJ violated his Fifth Amendment right to due process by limiting him to examining just one of the three witnesses he sought to call, and (2) that his application for relief from removal was denied in error. The BIA affirmed without opinion on October 7, 2004. Singh's petition for review in this Court, filed on November 8, 2004, is timely. Singh has also timely sought review of the BIA's March 1, 2004 determination in the Government's appeal to the BIA that his past criminal convictions constituted aggravated felonies, as well as the due process and relief from removal claims he raised in his own subsequent BIA appeal.[4]

_____

[3] This was Singh's first appeal to the BIA in the case, though it was the second appeal overall because the Government had previously successfully appealed to the BIA following the October 20, 2003 ruling that he was not an aggravated felon under the INA.

[4] This Order was not final when rendered by the BIA on March 1, 2004 because it remanded the case to allow Singh to apply for relief from removal. It became final, and amenable to our

3

## II.

Under the REAL ID Act, our jurisdiction encompasses "constitutional claims or questions of law raised upon a petition for review." REAL ID Act, § 106(a)(1)(A)(iii), Pub. L. No. 109-13, 119 Stat. 231, 310 (2005), *codified at* 8 U.S.C. § 1252(a)(2)(D); *Papageorgiou v. Gonzales*, 413 F.3d 356, 358 (3d Cir. 2005).[5] This represents an enlargement of our jurisdiction over final orders of removal issued against aggravated felons, which, prior to enactment of REAL ID, was proscribed by 8 U.S.C. § 1252(a)(2)(C).[6] Whether Singh's convictions are aggravated felonies under 8 U.S.C. § 1227(a)(2)(A)(iii) presents a question of law within our subject matter jurisdiction. Singh's due process claims are constitutional in nature, and within our jurisdiction under the REAL ID Act. Finally, we have jurisdiction under 8 U.S.C. §

jurisdiction, following the BIA's October 7, 2004 affirmance.

[5] The Government moved on March 11, 2005 to dismiss Singh's petition for lack of jurisdiction. Subsequently, the REAL ID Act was enacted on May 11, 2005, after Singh received a final administrative order, and after he filed the present petition. However, Congress clearly intended REAL ID § 106(a)(1)(A)(iii) to "apply to any case 'in which the final administrative order of removal, deportation, or exclusion was issued before, on, or after the date of enactment.'" *Papageorgiou v. Gonzales*, 413 F.3d 356, 358 (3d Cir. 2005) (quoting REAL ID Act § 106(b)). Singh's final order of removal was issued "before, on, or after the date of enactment"; we therefore now have jurisdiction to consider his petition for review, and will deny the Government's March 11, 2005 Motion to Dismiss. Because we reach the merits of Singh's case, we will also deny the Government's November 22, 2005 Motion to Vacate and Remand.

[6] Prior to enactment of the REAL ID Act, we did have limited "jurisdiction to determine our jurisdiction under [8 U.S.C. § 1252(a)(2)(C)] with respect to both of the predicate facts required for application of [§ 1252(a)(2)(C)]–first, whether a petitioner is in fact an alien, and, second, whether he or she is indeed removable by reason of having been convicted of one of the enumerated offenses in [§ 1252(a)(2)(C)]." *Papageorgiou*, 413 F.3d at 357 (citations and quotations omitted).

4

1252(a)(2)(D) to consider Singh's CAT and withholding of removal claims to the extent they present questions of law, or of the application of law to undisputed fact. *See Kamara v. Att'y Gen.*, 420 F.3d 202, 211 (3d Cir. 2005) (finding that court of appeals had jurisdiction under REAL ID Act to review legal determinations and application of law to fact under the CAT).

III.

We first determine whether Singh is removable as an aggravated felon under 8 U.S.C. § 1227(a)(2)(A)(iii), and conclude that he is. For purposes of the INA, 8 U.S.C. § 1101(a)(43) defines "aggravated felony" to include a wide array of offenses; relevant to this case is subsection (F), which brings "a crime of violence [defined in 18 U.S.C. § 16] for which the term of imprisonment [is] at least one year" within the ambit of the definition. In turn, 18 U.S.C. § 16 defines "crime of violence" as:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

The present question is whether simple assault under 18 Pa. Cons. Stat. Ann. § 2701(a)(3), or recklessly endangering another person under 18 Pa. Cons. Stat. Ann. § 2705–the crimes for which Singh was convicted–are crimes of violence within 18 U.S.C. § 16, and, therefore, aggravated felonies under the INA, 8 U.S.C. § 1101(a)(43).

The BIA's interpretation of 18 U.S.C. § 16 is not entitled to deference by this Court: as a federal criminal provision outside the INA, it lies beyond the BIA's area of special expertise. *Tran v. Gonzales*, 414 F.3d 464, 470 (3d Cir. 2005); *Francis v. Reno*, 269 F.3d 162, 168 (3d Cir. 2001). We exercise plenary review over the BIA's purely legal determination that Singh's convictions for simple assault and recklessly endangering another person were aggravated felonies. *Valansi v.*

5

*Ashcroft*, 278 F.3d 203, 207 (3d Cir. 2002). With this in mind, we turn to the Pennsylvania crimes of which Singh has been convicted, and conclude that his conviction for simple assault qualifies as an aggravated felony, but that his conviction for recklessly endangering another person does not.

As an initial matter, we note that both crimes were misdemeanors under Pennsylvania law; thus, neither could be a "felony" under § 16(b), which relies on the state's grading of the offense to determine whether it is a "felony." *Francis*, 269 F.3d at 168-70. Therefore, we consider whether either conviction was for an offense "that has as an element the use, attempted use, or threatened use of physical force against the person or property of another" under § 16(a).[7] The underlying facts of the conviction are not relevant; rather, we must "look to the elements and the nature of the offense of conviction" when determining whether it is a crime of violence.[8] *Leocal v. Ashcroft*, 543 U.S. 1, 11 (2004).

To qualify as a "crime of violence" within 18 U.S.C. § 16(a), a criminal statute must require a *mens rea* of specific intent to use force; mere recklessness is insufficient. *Tran*, 414

---

[7] Under 18 U.S.C. § 16(a), it does not matter that the state criminal code does not characterize the offense as a felony; rather, the key inquiry is whether it "has as an element the use, attempted use, or threatened use of physical force against the person or property of another," 18 U.S.C. § 16(a), and "for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(F); *see also Francis v. Reno*, 269 F.3d 162, 169 (3d Cir. 2001) (noting that section 16(a) does not look to state grading of crime). The parties do not dispute that Singh received a sentence of at least one year for his convictions.

[8] We need not reach the question we raised in an unrelated immigration case, *Singh v. Ashcroft*, 383 F.3d 144, 161-62 (3d Cir. 2004); namely, whether we must look to the underlying facts of the conviction in order to determine which portion of a disjunctively-phrased statute afforded the basis of the judgment. Here, though the reckless endangerment statute, 18 Pa. Cons. Stat. Ann. § 2705, *is* disjunctive, we find for reasons set forth *infra*, section III.B, that no aspect of it describes a crime of violence under 18 U.S.C. § 16(a).

6

F.3d at 470 (citing *United States v. Parson*, 955 F.2d 858, 866 (3d Cir. 1992)). We have held that another section of the Pennsylvania simple assault statute, 18 Pa. Cons. Stat. Ann. § 2701(a)(1), which states that "[a] person is guilty of assault if he . . . attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another," requires no more than a *mens rea* of recklessness, and therefore does not describe a crime of violence within the meaning of § 16(a). *Popal v. Gonzales*, 416 F.3d 249, 254-55 (3d Cir. 2005) (citing *Tran*, 414 F.3d at 472). It is not dispositive that the crime *may* be proven by a showing of specific intent–all that is necessary to place it outside § 16(a) is that it could *also* be established with proof of a lesser *mens rea*.

A.

The section of the Pennsylvania simple assault statute under which Singh was convicted reads: "A person is guilty of assault if he . . . attempts by physical menace to put another in fear of imminent serious bodily injury." 18 Pa. Cons. Stat. Ann. § 2701(a)(3). In contrast to our classification of § 2701(a)(1) in *Popal*, § 2701(a)(3) is a crime of violence within 18 U.S.C. § 16(a) because it "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." Under Pennsylvania law, simple assault as set forth in § 2701(a)(3) is a specific intent crime. *See Commonwealth v. Fry*, 491 A.2d 843, 844 (Pa. Super. Ct. 1985) (noting that specific intent is a necessary element under § 2701(a)(3)); *Commonwealth v. Gouse*, 429 A.2d 1129, 1133 n.3 (Pa. Super. Ct. 1981) (same). The language of (a)(3) dictates this result: the word "attempt" necessarily involves a mental state of specific intent. It is well-established that attempt cannot be established without a mental state of specific intent. *See Knapik v. Ashcroft*, 384 F.3d 84, 91 (3d Cir. 2004) ("the concept of an attempted recklessness crime is nonsensical"); *cf. Commonwealth v. Geathers*, 847 A.2d 730, 734 (Pa. Super. Ct. 2004) (holding crime of attempted murder requires specific intent).

Furthermore, the requirement of 18 U.S.C. § 16(a) that the elements of a "crime of violence" include "use, attempted use, or threatened use of physical force" plainly encompasses the term "physical menace" in § 2701(a)(3). Under Pennsylvania law, "physical menace" requires some physical act by the

7

perpetrator intended to cause "fear of imminent serious bodily injury" in the victim. *See*, *e.g.*, *Commonwealth v. Reynolds*, 835 A.2d 720, 726 (Pa. Super. Ct. 2003) (pointing gun constituted "menacing or frightening activity" that placed victims "in fear of imminent serious bodily injury" under § 2701(a)(3)); *Commonwealth v. Little*, 614 A.2d 1146, 1148 (Pa. Super. Ct. 1992) (physical menace accomplished under § 2701(a)(3) where "appellant erratically emerged from her home carrying a shotgun, shouting and advancing from her porch" causing officers to become fearful of imminent bodily injury). "Physical menace" refers to physical acts committed to threaten another with corporeal harm. An attempt to distinguish between such acts and the concept of "the use, attempted use, or threatened use of physical force" employed by § 16(a) would be meaningless. We cannot reasonably conceive of a situation wherein such an act of "physical menace," intended to place another in fear of imminent serious bodily injury, would not, at the very least, constitute the attempted or threatened use of physical force contemplated by 18 U.S.C. § 16(a).[9]

Singh argues that *Commonwealth v. Little*, 614 A.2d 1146 (Pa. Super. Ct. 1992), and *Commonwealth v. Hudgens*, 582 A.2d 1352 (Pa. Super. Ct. 1990), present applications of § 2701(a)(3) that do not involve the use of physical force, but we are unable to agree. In *Little*, the defendant, responding to attempts by officers to serve her with a foreclosure notice, several times emerged from her house carrying a shotgun in the cradle of her arm. 614 A.2d at 1147-48. She ordered them to leave her

---

[9] Our holding in *Bovkun v. Ashcroft*, 283 F.3d 166, 170 (3d Cir. 2002), supports our conclusion here. In that case, we held that the Pennsylvania crime of terroristic threats as codified at the time at 18 Pa. Cons. Stat. Ann. § 2706 (West 1998) met the 18 U.S.C. § 16(a) definition of a crime of violence. *Id.* We so held because § 2706 required that the perpetrator "threaten[] to commit any crime of violence," and could find no Pennsylvania case construing that term that did not "have as an element 'the use, attempted use, or threatened use of physical force against the person or property of another.'" *Id.* (quoting 18 U.S.C. § 16(a)). The present case is the same: as discussed, we can neither find nor conceive of any reasonable iteration of "physical menace" that would not amount to "the use, attempted use, or threatened use of physical force."

property, and at one point approached within three to six feet of an officer while carrying the gun. *Id*. at 1147. The officers feared for their safety, radioed for back-up, and ultimately left, having refrained from getting near enough to hand the papers to the defendant. *Id*. The Superior Court of Pennsylvania held that this established simple assault by physical menace under § 2701(a)(3). *Id*. at 1148. We cannot see how this holding helps Singh: commanding officers to leave the premises while holding a shotgun is a threat of force that carries a grave implication of serious physical harm. *Little* does not present an instance of § 2701(a)(3) physical menace that does not also amount to a threatened use of force under 18 U.S.C. § 16(a). Likewise, *Hudgens* is of no help to Singh. There, the defendant brandished a sword at the victim, and even touched him with it, and this constituted "physical menace." *Hudgens*, 582 A.2d at 1355. Such a form of physical menace is, quite plainly, also a use or threatened use of physical force under § 16(a).

Accordingly, we hold that simple assault as defined by 18 Pa. Cons. Stat. Ann. § 2701(a)(3) requires specific intent to use, threaten to use, or attempt to use force against an individual, and is therefore a crime of violence within 18 U.S.C. § 16(a). Thus, it is an aggravated felony under 8 U.S.C. § 1101(a)(43), which defines the term as it is used in 8 U.S.C. § 1227(a)(2)(A)(iii), rendering Singh removable.

### B.

In contrast, the Pennsylvania offense of recklessly endangering another person, 18 Pa. Cons. Stat. Ann. § 2705, is not a crime of violence within 18 U.S.C. § 16(a) because it requires a *mens rea* of no more than recklessness. Section 2705 provides that "[a] person commits a misdemeanor of the second degree if he *recklessly* engages in conduct which places or may place another person in danger of death or serious bodily injury." (Emphasis added). As we held in *Tran*, crimes that require no more than a *mens rea* of recklessness are not § 16 crimes of violence.

Nevertheless, because Singh's conviction for simple assault is a crime of violence under 18 U.S.C. § 16(a), it is an aggravated felony for purposes of 8 U.S.C. § 1227(a)(2)(A)(iii). He therefore remains removable under that section.

9

IV.

Singh argues that he was denied due process because he could not examine all the witnesses he proposed to call during the June 3, 2004 hearing concerning his withholding of removal and CAT claims. He also claims that he did not understand the questions posed to him on direct examination, and that this also denied him due process. Neither claim has merit. We exercise plenary review over procedural due process claims. *Bonhometre v. Gonzales*, 414 F.3d 442, 446 (3d Cir. 2005), *petition for cert. filed*, No. 05-8015 (U.S. Oct. 13, 2005). Aliens are "entitled to a full and fair hearing of [their] claims and a reasonable opportunity to present evidence." *Chong v. Dist. Dir., INS*, 264 F.3d 378, 386 (3d Cir. 2001). To prevail on such claims, an alien must show substantial prejudice. *Bonhometre*, 414 F.3d at 448.

Singh has shown no prejudice as a result of the alleged shortcomings in his June 3, 2004 hearing before the IJ. He argues that he would have presented testimony from his parents to support his withholding and CAT claims, but nowhere suggests that such testimony would have tended to establish past persecution, or a fear of persecution or torture, nor that it would have been anything other than cumulative. Regarding his claim that he did not understand questions from counsel, the record shows that Singh was able to convey his fear of torture and persecution, and that the IJ understood his testimony and took it as establishing his subjective fear. Furthermore, the record indicates that Singh's counsel did not object to the IJ's suggestion that the testimony be limited to his uncle. Nor did Singh's counsel raise any concerns about Singh's testimony: when the IJ indicated that Singh had established his subjective fears, and would "leave it at that," his counsel responded only with "[t]hat's fair." App. 61. Singh does not point to, and we cannot discern any prejudice in these aspects of the hearing.[10]

---

[10] Singh claims that separation from his family in the United States is prejudice. While we acknowledge that such a result is indeed regrettable, it is not prejudice in the sense of affecting the outcome of his proceeding. *See United States v. Fernandez-Antonia*, 278 F.3d 150, 159 (2d Cir. 2002) (prejudice entails the possibility of causing a different outcome); *Kuciemba v. INS*, 92 F.3d 496, 501 (7th Cir. 1996) (same).

10

Accordingly, his due process claims must fail.

## V.

Singh also challenges the BIA's determination that he did not establish his claims for withholding of removal under 8 U.S.C. § 1231(b)(3)(A) and the CAT under 8 C.F.R. § 208.16(c)(2).[11]  As stated in section II, *supra*, the REAL ID Act grants us jurisdiction to review constitutional claims and questions of law.  8 U.S.C. § 1252(a)(2)(D).  We have also held that this includes review of the BIA's application of law to undisputed fact.  *See Kamara*, 420 F.3d at 210-11 (court of appeals has jurisdiction after REAL ID Act to review the application of law to undisputed fact in the CAT claim of an alien convicted of an aggravated felony).  We exercise plenary review over the BIA's legal determinations, affording *Chevron*[12] deference to its reasonable interpretations of statutes it is charged with administering. *Id*. at 211.  The Government does not address the merits of Singh's claims in this respect.  Singh merely recapitulates his due process arguments, claiming an inability to present his case.  He does not question the IJ's determination of the law or its application to the facts of the case.  Having determined in section IV, *supra*, that there was no due process violation and that the facts of his case were fairly presented and adjudicated, we can find no argument by Singh that the IJ erroneously determined the law or misapplied it.  Accordingly, we find that his withholding of removal and CAT claims lack merit.

## VI.

For the foregoing reasons, we conclude that Singh is removable under 8 U.S.C. § 1227(a)(2)(A)(iii) as an aggravated felon, and that his due process rights have not been violated.  His CAT and withholding of removal claims lack merit.  We will therefore deny his petition.

---

[11] We review the IJ's decision on these issues as the decision of the BIA, which affirmed without opinion. *See Gao v. Ashcroft*, 299 F.3d 266, 271 (3d Cir. 2002).

[12] *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984).