

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-12-2006

# Nkomo v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1325

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Nkomo v. Atty Gen USA" (2006). *2006 Decisions.* Paper 1122.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1122

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 05-1325
_____

THIERRY NKOMO,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES
_____

On Review of a Decision of the
Board of Immigration Appeals
(Agency No. A97 434 252)
Immigration Judge: Henry S. Dogin
_____

Submitted Under Third Circuit LAR 34.1(a)
March 13, 2006

BEFORE: McKEE, FUENTES and NYGAARD, CIRCUIT JUDGES

(Filed    May 12, 2006   )

_____

OPINION
_____

PER CURIAM

 Thierry Nkomo, a native and citizen of Cameroon, petitions for review of a final

order of the Board of Immigration Appeals ("BIA"). We will deny the petition for review.

Nkomo was admitted to the United States in November 2002 as a non-immigrant visitor with authorization to remain for three months. He stayed beyond the allotted time and, in June 2003, was charged as being removable for having overstayed his admission period.[1] See Immigration and Nationality Act ("INA") § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B). In July 2004, Nkomo applied for asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT").

Nkomo appeared pro se before an Immigration Judge in August 2004. He testified that he suffered persecution because of his membership in the National Association for the Defense of Human Rights in Cameroon, an organization that conducts investigations, provides assistance to victims of human rights abuses, and provides reports to human rights organizations, such as Amnesty International.[2] See Administrative Record ("A.R.") 93-98, 102-03. Nkomo stated that he was arrested at a political demonstration in October 1997. A.R. 95-96. While in custody for five days, he was beaten, "molested," and denied adequate food and water. A.R. 96. In September 2002, Nkomo was again arrested and was accused of possessing information about human rights abuses that was detrimental to the government. A.R. 97. He claimed he was held for ten days, during which he was beaten almost every morning. A.R. 98. Upon his release, the police took his official

---

[1] In 2004, Nkomo pled guilty to conspiracy to defraud the United States in violation of 18 U.S.C. § 371. He was not charged with removability on the basis of this conviction.

[2] Nkomo also referred to the group as the National Association of Justice and Equality, and stated that his father was a founding member. See A.R. 103-05.

documents and told him to report back in 30 days for further investigation. Id. Afraid to return to home or work, Nkomo immediately went into hiding with his cousin. A.R. 98-99. After obtaining a visa and passport with the assistance of his boss, Nkomo left for the United States in November 2002. A.R. 99-100. He spoke to a lawyer about seeking asylum but did not immediately pursue the claim because he could not afford the lawyer's $4000 fee. A.R. 104. Nkomo claimed that his wife, who is still in Cameroon, stated as recently as April 2003 that the police were still looking for him. A.R. 114. He presented no corroborating documentation, however, noting that the records he did have were in the possession of a former roommate in Maryland who had severed all ties with him. A.R. 108.

The Immigration Judge ("IJ") denied relief, finding that Nkomo's account was inconsistent, implausible, and not adequately supplemented with documentary evidence. Accordingly, on August 26, 2004, the IJ denied relief. The BIA affirmed the IJ's decision without opinion on January 13, 2005. Nkomo timely petitioned for review.

Because the BIA did not provide any independent analysis, we review the decision of the IJ as if it were the BIA's decision. Abdulai v. Ashcroft, 239 F.3d 542, 549 n.2 (3d Cir. 2001). Our standard of review is narrow. We must sustain the IJ's removal order if there is substantial evidence in the record to support it. Abdille v. Ashcroft, 242 F.3d 477, 483 (3d Cir. 2001). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a

3

conclusion." Senathirajah v. INS, 157 F.3d 210, 216 (3d Cir. 1998) (quotation omitted). This is a deferential standard, and the IJ's "finding must be upheld unless the evidence not only supports a contrary conclusion, but compels it." Abdille, 242 F.3d at 483-84 (citing INS v. Elias-Zacarias, 502 U.S. 478, 481 & n.1 (1992)).

Nkomo argues that the IJ erred in denying his claim based on a lack of corroborating evidence. Although an applicant's credible testimony may be sufficient to sustain his burden of proof without corroboration, see 8 C.F.R. § 208.13(a); 208.16(b), (c)(2), the IJ may nonetheless require corroboration when the applicant is "reasonably expected" to do so, Dia v. Ashcroft, 353 F.3d 228, 253 (3d Cir. 2003) (en banc). In deciding whether the IJ reasonably required corroborating evidence, this Court employs a three-part inquiry: "(1) an identification of facts for which it is reasonable to expect corroboration; (2) an inquiry as to whether the applicant has provided information corroborating those facts; and, if he or she has not, (3) an analysis of whether an applicant has adequately explained why s/he was unable to do so." Mulanga v. Ashcroft, 349 F.3d 123, 134 (3d Cir. 2003) (internal quotation omitted).

The IJ faulted Nkomo for not providing documentary evidence from the National Association for the Defense of Human Rights, his wife, his cousin, his former boss, and his former roommate in Maryland. This conclusion is entitled to great deference. The Real ID Act of 2005 provides that "[no] court shall reverse a determination made by a trier of fact with respect to the availability of corroborating evidence . . . unless the court

4

finds . . . that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable."[3] § 101(e), Pub. L. No. 109-13, 119 Stat. 231, 305, codified at 8 U.S.C. § 1252(b)(4).

Nkomo's claims of persecution are based on his membership in the National Association for the Defense of Human Rights. The IJ emphasized that he submitted no documentary proof of his (or his father's) membership in that organization, reports generated by the organization, or affidavits from other members. Also central to Nkomo's claims are his efforts to leave Cameroon and the police's continued desire to find him. He provided no reasons, however, why he could not have obtained statements from his cousin, his former boss, or his wife. Notably, Nkomo testified that since coming to the United States he had been in touch with his wife, who remained in Cameroon. See Abdulai, 239 F.3d at 554 (noting that it is reasonable to expect "letters from family members remaining in the applicant's home country.").

The IJ recognized that Nkomo's ability to provide corroborating evidence was likely hampered by his incarceration in the United States and his pro se status. Importantly, though, Nkomo explained that he began the asylum application process shortly after his arrival in the United States in 2002, and thus he had ample opportunity to obtain documentary evidence before he went to jail. We have noted that "[i]t is obvious that one who escapes persecution in his or her own land will rarely be in a position to

---

[3] This provision became effective immediately, and applies to Nkomo's petition. § 101(h)(3), Pub. L. No. 109-13.

5

bring documentary evidence or other kinds of corroboration to support a subsequent claim for asylum." Dia 353 F.3d at 253. Here, however, Nkomo stated that he had documentary support with him in the United States, but that he did not produce it because it was in the possession of a former roommate in Maryland who had severed all ties with him. A.R. 108. Furthermore, Nkomo testified that "there are medical certificate[s] that would show or prove that I was arrested and tortured." A.R. 105. Under these circumstances, we believe that a reasonable finder of fact would not be compelled to conclude that corroborating evidence is unavailable.[4]

Nkomo also argues that the BIA violated his due process rights "when it affirmed

---

[4] We note that some of the IJ's other credibility findings are not cogently supported by the record evidence. For example, Nkomo testified that he hid at his cousin's home for approximately two months before coming to the United States. The IJ noted that his asylum application listed his last address in Cameroon as his permanent home, where he lived with his wife and children prior to going into hiding. Nkomo reasonably explained, however, that "I did not consider my cousin's address as being . . . the one that belonged to me." A.R. 111. The IJ also found implausible Nkomo's assertion that he was able to obtain a valid passport and take a plane to the United States despite his failure to report back to the police in 30 days as instructed. This determination assumes that the law enforcement organizations and consular services in Cameroon (which Nkomo stated are "different agencies") are able to timely share information. Any conclusion that Cameroon's security apparatus is that well-functioning rests on sheer speculation. The IJ further noted that Nkomo testified that his wife told him that the police were still looking for him but failed to include this fact in his asylum application when addressing whether he believed that he would be harmed upon his return to Cameroon. However, "an applicant's testimony is not per se lacking in credibility simply because it includes details that are not set forth in the asylum application." Lopez-Reyes v. INS, 79 F.3d 908, 911 (9th Cir. 1996). Despite the lack of substantial evidence for these conclusions, the absence of corroborating evidence is sufficient by itself to defeat Nkomo's claims. Abdulai, 239 F.3d at 551-52 (observing that even where an applicant is credible, corroboration may be required if the applicant is to meet his burden of proof).

6

without opinion the decision of the [IJ] . . . without giving petitioner an opportunity to file a brief in support of his timely appeal." In particular, Nkomo claims that, because he did not receive a briefing schedule issued by the BIA, he was unable to submit "supporting documents for Amnesty International, U.S. State Department and United Nations and other human rights organizations" [that were] not available at the time of the hearing before the [IJ]." Importantly, however, even if the BIA was permitted to take administrative notice of that material on appeal, see 8 C.F.R. § 1003.1(d)(3)(iv), Nkomo cannot demonstrate that its exclusion resulted in substantial prejudice. See Singh v. Gonzales, 432 F.3d 533, 541 (3d Cir. 2006). Indeed, the reports Nkomo sought to introduce have no bearing on the IJ's adverse credibility determination. In addition, we have held that the BIA's affirmance without opinion pursuant to the streamlining regulations does not constitute a violation of due process. See Dia, 353 F.3d at 238.

For the reasons given, we will deny the petition for review.