OPINION
PER CURIAM.
Hubert Johnson petitions for review of the Board of Immigration Appeals’ (“BIA”) September 26, 2008 decision sustaining the Government’s appeal of the Immigration Judge’s grant of relief under the Convention Against Torture (“CAT”). The Government has moved to dismiss the petition for review for lack of jurisdiction. For the reasons that follow, we will deny the Government’s motion and the petition for review.

I. Background

Johnson, a native and citizen of Jamaica who suffers from bipolar disorder, entered the United States as a lawful permanent resident in 1981. In 1986, a Florida state court convicted him of importing and possessing a controlled substance. In light of that conviction, he was ultimately placed in removal proceedings. In 1999, an Immigration Judge (“IJ”) ordered that he be removed to Jamaica, and the BIA subsequently affirmed that decision without an opinion.
*371 In 2002, Johnson’s removal proceedings were reopened so that he could apply for relief under former 8 U.S.C. § 1182(c). While that application was pending, a federal district court convicted him of bank robbery, which rendered him ineligible for § 1182(c) relief. He then applied for CAT relief, arguing that, were he to return to Jamaica — where he had no family or other contacts — he would not have access to medication for his bipolar disorder. He further alleged that, because his bipolar disorder would be uncontrolled, he would likely come to the attention of the Jamaican authorities, who would imprison him and ultimately torture him because of his mental illness.
In October 2006, after a hearing on the merits, the IJ granted Johnson’s request for CAT relief. The Government appealed to the BIA, which sustained the appeal in February 2007. Johnson petitioned us to review the BIA’s decision, and we subsequently granted the Government’s motion to remand to the BIA for reconsideration of its decision. On remand, the BIA again held that Johnson had failed to establish his entitlement for CAT relief. He petitioned for review of that decision, and we sua sponte remanded the case so that the BIA could consider the impact of our recent decision in Lavira v. Attorney General of the United States, 478 F.3d 158 (3d Cir.2007). The BIA in turn remanded the case to the IJ, who issued a decision in May 2008 granting Johnson’s request for CAT relief. As before, the Government appealed the IJ’s decision to the BIA.
In September 2008, the BIA sustained the Government’s appeal. The BIA held that “[t]here is insufficient evidence in the record to support the [IJ’s] finding that [Johnson] will, more likely than not, be subjected to torture upon return to Jamaica.” (BIA Decision of Sept. 26, 2008, at 3.) The BIA reached this conclusion
even assuming, arguendo, that [Johnson] will likely be denied his medication, that he will, more likely than not, experience bipolar disorder symptoms if deprived of his medication, and that he will, more likely than not, come to the attention of law enforcement and be imprisoned as a result of such bipolar disorder symptoms and resulting actions.

(Id.)

Johnson petitioned for review of the BIA’s September 2008 decision, and the Government has since moved to dismiss the petition for lack of jurisdiction.

II. Jurisdiction

Although we generally lack jurisdiction to review final orders of removal against certain criminal aliens, like Johnson, see 8 U.S.C. § 1252(a)(2)(C), we nonetheless have jurisdiction to review constitutional claims or legal questions that a criminal alien raises in his petition for review. See 8 U.S.C. § 1252(a)(2)(D). This jurisdiction “includes review of the BIA’s application of law to undisputed fact.” Singh v. Gonzales, 432 F.3d 533, 541 (3d Cir.2006). In this case, Johnson argues that the BIA both applied the wrong standard of review and misapplied governing law. Because these claims fall within the scope of our jurisdiction, we will deny the Government’s motion to dismiss and turn to the merits of Johnson’s petition.

III. Discussion

Johnson first challenges the BIA’s February 2007 decision sustaining the Government’s appeal of the IJ’s original grant of CAT relief. He argues that, in rejecting the IJ’s factual finding that Johnson would be unable to obtain medication for his bipolar disorder were he to return to Jamaica, the BIA applied the wrong standard of review. We need not decide this claim, for the BIA’s most recent (and controlling) *372 decision denying Johnson’s CAT claim did not turn on this factual finding.[1]
Johnson’s remaining claim relates to the BIA’s denial of CAT relief in its September 2008 decision. Pursuant to 8 C.F.R. § 208.16(c)(2), an alien seeking CAT relief must show that “it is more likely than not that he or she would be tortured if removed to the proposed country of removal.” Johnson argues that the BIA misapplied this standard to the facts of his case. We disagree. Contrary to what Johnson alleges, there is no indication that the BIA failed to consider the record as a whole in rendering its decision. The BIA’s decision examined all of the evidence and explained why that evidence failed to meet the standard for CAT relief.
As part of his argument, Johnson takes issue with the BIA’s treatment of a letter submitted from Dr. Aggrey Irons, a psychiatrist in Jamaica. Dr. Irons’ letter stated that if Johnson did not have “close, interested family members resident in Jamaica,” his condition would likely relapse, which in turn would almost certainly lead to his interaction with the police and subsequent criminal detention. Dr. Irons further stated that, once detained, Johnson would face “an alarmingly high possibility of extrajudicial execution.” In concluding that Johnson had failed to show that he would more likely than not be tortured, the BIA noted, inter aha, that Dr. Irons’ letter “does not quantify what he means by an ‘alarmingly high possibility of extrajudicial execution.’ ” (BIA Decision of Sept. 26, 2008, at 4.)
The BIA’s observation is both accurate and relevant. Because Dr. Irons did not expand on his statement, one cannot determine whether his reference to “an alarmingly high possibility” is tantamount to “more likely than not” or some lesser likelihood. Indeed, one could certainly argue that if one out of every 100 inmates — a mere one percent — were subject to extrajudicial execution, that would constitute an “alarmingly high” rate. Accordingly, we find no error in the BIA’s treatment of this evidence.
In light of the above, we will deny Johnson’s petition for review, as well as his request for oral argument.

. In the same vein, we also need not decide Johnson's related claim that the BIA’s application of the wrong standard of review in its February 2007 decision resulted in an incorrect ruling on the merits.