IMG-246                                                                    NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3420
_____

WELTON VALENTIN,
                                                            Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                                            Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A097-918-944)
Immigration Judge: Mirlande Tadal

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 23, 2010

Before:  FUENTES, VANASKIE AND VAN ANTWERPEN, <u>Circuit</u> <u>Judges</u>

(Opinion filed July 2, 2010)
_____

OPINION
_____

PER CURIAM

     Welton Valentin has filed a petition for review of the final order by the Board of

Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ"'s) denial of

Valentin's requests for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). For the reasons that follow, we will deny the petition for review.

The parties are familiar with the background of this case, and so we provide only a summary of the proceedings. Valentin is a citizen of Haiti. He arrived in the United States in 2003 and shortly thereafter filed an asylum application. The application was referred to an IJ, and Valentin was placed in removal proceedings for being an alien present in the United States without being admitted or paroled. Valentin conceded removability. He later amended and supplemented his asylum application and also sought withholding of removal and CAT protection. On December 2, 2008, the IJ conducted a hearing on Valentin's claims.

Valentin testified that he was a member of MOCHRENA (Movement by Christians for Peace in New Haiti), a political party. He stated that he was the "spokesperson" of the party, and part of his role was to teach others how to vote, and to assist the party when it was faced with aggression by the opposition party.[1] Regarding such aggression, Valentin testified about an incident at a MOCHRENA meeting when several men entered and told them to stop the meeting. Several party members were beaten and two were arrested. Valentin escaped harm because he ran away, though he

---

[1] His written statement also noted that he publicized MOCHENA meetings and events. He and other members assisted the populace with literacy, the voting process, obtaining employment, and obtaining medical help.

2

went to the hospital to assist the injured members. This incident was omitted from both his original asylum application and his amended application. When asked to explain the omission, Valentin stated that he did not understand English at the time he signed his original application, and he insisted that the incident had been included in his amended application. Valentin also testified that in January 2003, five men accosted him on the street on his way home from a party meeting, beat him, and threatened him with harm if he did not stop working for MOCHRENA. Valentin testified that he recognized one of the assailants in both of the 1999 and 2003 incidents as a police officer named Bernadin Narcisse, who lived in his neighborhood in Haiti. Although he testified that he was the only one attacked in connection with the January 2003 meeting, his amended asylum application also indicated that two members were attacked during the meeting. When asked to further explain about the attack that had occurred during the meeting, Valentin stated that he did not understand English when the application was prepared and that "the way that I explained it to him is not the way it went about. I told them when I was getting out of the meeting, but I didn't tell them that I was out back at the meeting." (A.R. 138-39.)

Valentin also testified about an incident that occurred in April 2003, stating that several men attacked him in his home after he attended a party meeting. The men restrained him and tried to drive a nail into his hand with a hammer, but they could not do so because Valentin was moving his hand. Valentin testified that the men beat his

hand with the hammer instead. His initial and amended asylum applications mention the incident but state that the men did hammer the nail into his hand. On his amended asylum application, Valentin claimed that the police burned down his house after the attack and that he decided to leave Haiti that same day, but he did not mention this fact in his testimony. When asked about the omission, Valentin denied ever stating that his house was burned down and instead stated that it was the president of the party whose house had been burned. In addition to his testimony, Valentin submitted various articles about conditions in Haiti. He also submitted documentation of the medical treatment he received on his right hand when he reached the United States.

The IJ found that Valentin did not testify credibly. The IJ also determined that Valentin had not met his burden of proof for asylum, withholding, or CAT relief, even assuming that his testimony was credible. The IJ denied relief and ordered removal to Haiti. On July 21, 2009, the BIA dismissed Valentin's appeal. The BIA found no clear error in the IJ's adverse credibility finding and also found no error in the denial of asylum and withholding removal even assuming Valentin's credibility. In addition, the BIA concluded that Valentin had not met his burden of proof on his CAT claim. This petition for review followed.

As the BIA affirmed the IJ's findings but did not address all of the findings, we will review both the BIA's and the IJ's decisions. See Xie v. Ashcroft, 359 F.3d 239, 242 (3d Cir. 2004). We review factual findings, including any credibility determinations,

4

under a substantial evidence standard.  See Cao v. Att'y Gen., 407 F.3d 146, 152 (3d Cir. 2005).  The Court must uphold the credibility determination of the BIA unless "any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4)(B).  We do not overturn a credibility finding simply because we would make a different finding.  See Gabuniya v. Attorney General, 463 F.3d 316, 321 (3d Cir. 2006).

We conclude that substantial evidence supports the adverse credibility determination.[2]  The BIA affirmed the IJ's determinations and noted that it was unnecessary to enumerate all of the inconsistencies in Valentin's testimony, but it specifically noted Valentin's account of the April 2003 attack at his home.  On his written applications, Valentin claimed that the assailants hammered a nail into his hand, but in his testimony, he stated that they beat his hand with the hammer.  The medical records from the treatment that Valentin received reflect that he was treated for an abscess on his right index finger, that he denied injury or trauma to the hand, and that he had been in pain for only a short time before seeking treatment.  The attack, however, occurred several months earlier, according to Valentin.  We also note the inconsistency between Valentin's written statement that two party members were attacked at a January 2003 meeting and his

---

[2]  The provisions of the REAL ID Act governing credibility determinations in asylum applications do not apply here, because Valentin's original asylum application was filed before the REAL ID Act's May 11, 2005 effective date.  See Chukwu v. Att'y Gen., 484 F.3d 185, 189 (3d Cir. 2007).  Valentin asserts that the IJ appears to have applied the post-REAL ID standard because the IJ relied on minor inconsistencies.  As will be discussed, we disagree.

5

testimony that he was the only member attacked that night. These and other discrepancies between his written applications and his testimony, including material omitted from the applications, go to the heart of Valentin's claims that he suffered harm or fears harm based on his party membership. We conclude that the adverse credibility finding was based on specific and substantial evidence supported by the record, and that the record does not compel a different result.[3]

As for Valentin's CAT claim, we note that his brief contains statements concerning the conditions of prisons in Haiti that may rise to the level of torture. However, his arguments are presented within the context of challenging the agency's decisions to deny asylum and withholding removal. Because no argument is presented regarding CAT relief, we deem the issue waived. See Lie v. Ashcroft, 396 F.3d 530, 532 n.1 (3d Cir. 2005).

Valentin also raises a due process issue, arguing that the IJ conducted the hearing in a fundamentally unfair manner. Valentin cites two examples in the hearing transcript to show that the IJ berated him during the hearing, and he compares his hearing to the hearing discussed in our decision in Kaita v. Attorney General, 522 F.3d 288, 292-294, 301 (3d Cir. 2008). Upon review of the hearing transcript, we disagree that Valentin's case is similar to Kaita. In Kaita, the IJ made frequent, disruptive interruptions during the

---

[3] Because substantial evidence supports the adverse credibility finding, we need not reach Valentin's arguments relating to his eligibility for asylum and withholding removal.

6

petitioner's testimony and made obvious attempts to rush the proceedings for scheduling reasons. Here, the IJ admonished Valentin because Valentin did not allow the translator to finish speaking before he gave his response. The transcript shows that the IJ explained that Valentin's speaking over the translator was causing confusion, and that it might impede the accuracy of the translation. It also appears from the transcript that the IJ expressed annoyance and perhaps some impatience with Valentin. However, we are not persuaded that Valentin suffered substantial prejudice in the sense that the outcome of his hearing was affected. See Singh v. Gonzales, 432 F.3d 533, 541 (3d Cir. 2006). Aside from asserting that the hearing was conducted unfairly, Valentin makes no specific argument regarding prejudice. He does not indicate that the proceedings were rushed or that he was prevented from offering any testimony.

We will deny the petition for review.