NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 07-3445/09-1892
_____

MEI YAN CHEN,
Petitioner,

v.

ATTORNEY GENERAL USA,
Respondent.
_____

On Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA 1:A97-442-006)
Immigration Judge:  Hon. Charles Honeyman
_____

Argued
July 12, 2010

Before:  RENDELL, JORDAN, and GREENAWAY, JR., *Circuit Judges*.

(Filed September 10, 2010)
_____

Norman K.W. Wong   [ARGUED]
90 Bowery - #301
New York, NY   10013
     *Counsel for Petitioner*

Sharon M. Clay
Richard M. Evans
Andrew J. Oliveira
Eric W. Marsteller   [ARGUED]
United States Department of Justice
Office of Immigration Litigation, Civil Div.
P.O. Box 878
Ben Franklin Station
Washington, DC   20044
        *Counsel for Respondent*

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Mei Yan Chen appeals an order of the Board of Immigration Appeals ("BIA") reversing the grant of asylum entered by the immigration judge ("IJ"). Chen contends that the BIA applied an incorrect standard of review when evaluating the merits of the IJ's disposition and that it improperly discounted the credibility of her expert witness. Though we find no merit in the latter contention, we agree that the BIA applied an improper standard of review, and we will therefore grant the petition for review and remand this case to the BIA for further consideration.

## I.   Factual Background

Mei Yan Chen is a citizen and native of China, whose home village is located in the city of Fuzhou, Fujian Province. In late 2003, unmarried and at the age of 22, she became pregnant. The pregnancy allegedly placed her in violation of the family-planning regulations of Fujian Province, which prohibit births by unmarried women. According to

Chen, Fuzhou family-planning officials repeatedly attempted to arrest her in order to compel her to abort the pregnancy. After avoiding family-planning officials for several days, she and her boyfriend, who is the father of her child, decided to flee China.

The two were separated while making the journey to the United States, and Chen arrived alone at Liberty International Airport in Newark, New Jersey, without valid entry documentation. On March 1, 2004, she was served with a Notice to Appear. She then filed an application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT") on the ground that she had violated Chinese family-planning policies by conceiving a child out of wedlock, and that she would be "forced to have an abortion, IUD insertion and even sterilization" under those policies if she returned to China. (R. at 839.)[1] She gave birth to a son on June 5, 2004.

On January 17, 2006, an immigration judge ("IJ") conducted a hearing on the petition, during which Chen testified that she fears that she "will get put in jail and also [be] sterilized because [she] wasn't married" when she conceived a child. (R. at 154.) She further explained that she views sterilization as likely because "[n]ormally [family-planning authorities] will sterilize you because you already violate[d] family-planning policy. For sure you're going to have to use the I.U.D." (*Id.* at 155.) Chen submitted as evidence two affidavits prepared by John Shields Aird, a retired demographer whose

---

[1]Because this is the second time Chen's case has been before us, there are two separate versions of the administrative record associated with it. Unless otherwise indicated, all citations refer to the record appearing in No. 07-3445.

career involved the study of Chinese population control policies. In the affidavits, Aird concluded that "Chen may well be at risk for a forced sterilization because she gave birth out of wedlock ... ." (*Id.* at 266 ¶ 12.) In support of that conclusion, Aird submitted over 130 exhibits, most of which are news articles dating from the 1980s and 1990s describing Chinese family-planning policies and efforts to enforce them.

The IJ granted Chen's asylum application, concluding that she possessed a well-founded fear of persecution, based on Aird's affidavits and on the 2003 and 2004 editions of the State Department's Country Report on Human Rights Practices for China ("the 2003 and 2004 Country Reports"). Both of those State Department reports indicate that an alien in Chen's situation would likely be required to pay a fine, known as a social compensation fee, if she were to return to China, and the IJ concluded that the fine might be severe enough to constitute persecution.[2] The IJ denied Chen's request for withholding of removal and for relief under the CAT on the grounds that she had not proven by a preponderance of the evidence a likelihood of persecution or torture.

The BIA reversed the IJ's asylum holding without specifying what standard of review it had applied to the IJ's decision. The BIA rejected Aird's affidavits as competent evidence because they were not based on Aird's personal knowledge, relied

---

[2]The imposition of social compensation fees may qualify as persecution if it "would result in such a substantial economic deprivation that it would constitute persecution." *In re T-Z-*, 24 I. & N. Dec. 163, 168-69 (B.I.A. 2007); *see also Li v. Att'y Gen.*, 400 F.3d 157, 167 (3d Cir. 2005) (holding that a fine may qualify as persecution if "the alien can show that he or she was subjected to a deliberate imposition of substantial economic disadvantage because of a protected ground" (internal quotation omitted)).

4

upon outdated information, and contradicted more recent reports prepared by the State Department. In particular, the BIA observed that Aird's affidavits conflict with the 2005 version of the State Department Country Report ("the 2005 Country Report"), which indicates that the Chinese government "formally prohibits the use of physical coercion to compel persons to submit to abortion or sterilization." (R. at 2 (quoting the 2005 Country Report at § 1.f).) The BIA also referenced the 2005 version of the State Department's Profile of Asylum Claims and Country Conditions ("the 2005 Asylum Profile"), which indicates that the State Department is unaware of "any cases in which returnees from the United States were forced to undergo sterilization procedures on their return." (*Id.* (quoting the 2005 Asylum Profile at § IV.C).) Based upon the 2005 Country Report and the 2005 Asylum Profile, neither of which were considered by the IJ, the BIA found that Chen lacked a well-founded fear of persecution in the form of mandatory sterilization or economic harm if she were repatriated, and it concluded that, without such a fear, she was ineligible for asylum, withholding of removal, or relief under the CAT.

The BIA entered a final order of removal, and Chen sought review in our court. On January 22, 2008, the government asked that we remand Chen's case to enable the BIA "to clarify what standard of review the [BIA] is to employ when reviewing whether an alien established a well-founded fear of persecution." (R. *in* No. 09-1892, at 17.) We granted the motion, and, on remand, the BIA explained its standard of review as follows:

> We review the findings of fact, including the determination of credibility, made by the Immigration Judge under a "clearly erroneous" standard. *See* 8 C.F.R. § 1003.1(d)(3)(i). We review all other issues, including whether the

> parties have met the relevant burden of proof, and issues of discretion, under a *de novo* standard. *See* 8 C.F.R. § 1003.1(d)(3)(ii).

(*Id.* at 3.) The BIA found that it had acted in accordance with that standard of review when issuing its previous decision, and it incorporated that decision into its opinion on remand without further consideration of the merits. Chen then filed the petition for review that is presently before us.

## II. Discussion[3]

On appeal, Chen claims that the BIA erred in reversing the IJ's grant of asylum because it applied an incorrect standard of review. To obtain asylum, an alien must show that he either suffered past persecution or has a well-founded fear of future persecution on the basis of a statutorily protected ground, namely, race, religion, nationality, political opinion, or membership in a particular social group. 8 U.S.C. § 1101(a)(42)(A); *Chavarria v. Gonzalez*, 446 F.3d 508, 516 (3d Cir. 2006). A person who is forced to undergo an abortion or a sterilization, or who has been persecuted for refusing to comply with a coercive population control policy, is deemed to have been persecuted based on political opinion. 8 U.S.C. § 1101(a)(42)(B). In this case, past persecution is not at issue.

---

[3]We have jurisdiction under 8 U.S.C. § 1252(a)(1) to review a final order of removal issued by the BIA. The BIA's ruling on an asylum petition is "conclusive unless manifestly contrary to the law and an abuse of discretion." 8 U.S.C. § 1252(b)(4)(D). We review the factual basis underlying the BIA's decision for substantial evidence. *Espinosa-Cortez v. Att'y Gen.*, 607 F.3d 101, 106 (3d Cir. 2010). We review the BIA's legal conclusions *de novo*, but we accord deference under *Chevron v. National Resources Defense Counsel, Inc.*, 467 U.S. 837 (1984), to the agency's interpretation of statutes and regulations within its enforcement jurisdiction. *Wang v. Ashcroft*, 368 F.3d 347, 349 (3d Cir. 2004).

Rather, Chen's right to asylum turns only upon whether she has a well-founded fear of persecution in the form of sterilization if she returns to China.

To establish a well-founded fear of persecution, an alien must demonstrate that, first, he has a subjective fear of persecution motivated by a statutorily protected ground; second, there is an objectively reasonable possibility that he will suffer persecution if returned to his native country; and third, he "is unable or unwilling to return to, or avail himself ... of the protection of, that country because of such fear." 8 C.F.R. § 1208.13(b)(2)(i). When reviewing an IJ's grant of asylum, the BIA is prohibited from "engag[ing] in de novo review of findings of fact determined by an immigration judge," 8 C.F.R. § 1003.1(d)(3)(i), but it reviews "questions of law ... and all other issues ... de novo," *id.* § 1003.1(d)(3)(ii).

Chen claims that the BIA violated those standards of review. According to Chen, the IJ's conclusions that she faced a reasonable possibility of sterilization upon return to China, and that she thus had a well-founded fear of persecution, both constitute findings of fact that the BIA was required to accept unless they were clearly erroneous. Chen also claims that the BIA erred because it discarded those findings based on the 2005 Country Report and the 2005 Asylum Profile, without explaining why the findings were incorrect. The government replies that whether an alien has a well-founded fear, including the inquiries into whether the fear is subjectively genuine and objectively reasonable, requires application of a "legal standard ... to the immigration judge's factual findings, and [is] thus reviewed by the Board de novo." (Gov't Supp. Br. at 2.) The government does not

7

respond to Chen's contention that the IJ's prediction of future events constitutes fact-finding that the BIA must accept unless clearly erroneous.

In *Huang v. Attorney General*, No. 09-2437, precedential slip op. (3d Cir. Aug 8, 2010), we addressed the same arguments that Chen raises here. We concluded in *Huang* that an IJ's predictions about what events may occur when an alien is repatriated constitute findings of fact that the BIA must review under the clearly erroneous standard. *Id.* at Section III.A.1.a., slip op. at 18 Thus, in Chen's case, the BIA erred when it failed to apply that standard to the IJ's conclusion that Chen would face "a combination of economic harm and harm relating to the probability of sterilization" if she were repatriated. (R. at 65.) We will therefore vacate the final order of removal and remand for the BIA to consider whether the IJ's findings are clearly erroneous and, if they are not, how they may affect the objective reasonableness of Chen's asserted fear of persecution.

Because that inquiry will require the BIA to reevaluate whether Chen has a well-founded fear of persecution, we will briefly discuss the standards of review the BIA must apply to that analysis. In *Huang*, we noted that the well-founded fear inquiry requires proof that the alien harbors subjective fear of persecution, that the fear is objectively reasonable, and that the alien will be unable or unwilling to request protection from law enforcement authorities. *Huang*, at Section III.A.1.b., slip op. at 19. We said that, while the first and third elements of the inquiry constitute factual issues subject to clearly erroneous review, the second element – objective reasonableness – is a mixed factual and legal question subject to clearly erroneous review as to the facts and *de novo* review as to

8

the law. *See id.* at Section III.A.1.b., slip op. at 21-24. The factual component of that analysis may depend on disputed facts, which the IJ must resolve, but the BIA retains the authority to say, regardless of the IJ's view, whether a reasonable person would fear persecution under the circumstances of a particular alien's case. *Id.* at Section III.A.1.b., slip op. at 29. We further cautioned that, when reviewing an IJ's asylum determination, the BIA's analysis "must reflect a meaningful consideration of the record as a whole. It is not enough for the BIA to select a few facts and state, based on them, that it disagrees with the IJ's conclusion." *Id.* at Section III.A.1.b., slip op. at 29. Instead, the BIA must set forth its reasoning with enough specificity to show that it has reviewed the totality of the record and "to inform the parties and us why it reached its conclusion." *Id.* at Section III.A.1.b., slip op. at 29.

The BIA did not review Chen's case in accordance with those standards. In granting Chen asylum, the IJ relied on Aird's affidavits, Chen's testimony, and the 2003 and 2004 Country Reports for China. The BIA, however, did not discuss Chen's testimony or the 2003 and 2004 Country Reports, and, instead, it relied on the 2005 Country Report and the 2005 Asylum Profile, neither of which the IJ considered.[4] Yet

_____

[4]Chen claims that the BIA violated her due process rights by taking administrative notice of the 2005 Country Report without giving her an opportunity to respond to it. We have never precedentially addressed what, if any, process an alien must receive when the BIA takes administrative notice of new evidence on appeal. However, to prevail on an alleged due process violation in the removal context, "the alien must show substantial prejudice" resulting from the violation. *Singh v. Gonzales*, 432 F.3d 533, 541 (3d Cir. 2006). At oral argument, Chen's counsel conceded that "the 2005 [Country] Report actually reports the same or more or less the same country conditions" as earlier versions

even those reports suggest that "[i]t continued to be illegal in almost all provinces for a single woman to have a child," (2005 Country Report § 1.f), that "[r]eports of forced sterilizations ... continued to be documented in rural areas," (*id.*), and that "coercion through public and other pressure has been used" to compel women to undergo a abortion and sterilization procedures, (2005 Asylum Profile § IV.B). The BIA's decision does not reflect any consideration of evidence supporting Chen's petition and hence is the type of selective review that we held improper in *Huang*. *See Huang*, Section III.A.2., slip op. at 31-32 (holding that the BIA may not ignore evidence favorable to the alien, and that it may not reject an asylum claim by choosing a few pieces of evidence and concluding that the alien's petition fails because the selected evidence does not show a right to relief).

Again, as in *Huang*, we are not saying that the BIA is required to mention every piece of evidence a petitioner proffers. Instead, our point is that the 2003, 2004, and 2005 State Department reports collectively provide evidence to support Chen's asylum claim, and the BIA should not have simply ignored evidence that is favorable to her case. Instead, the BIA must "show that it reviewed the record and considered the evidence upon which the IJ relied, and it must explain why the record warrants a different conclusion than the one reached by the IJ." *Huang*, Section III.A.1.b., slip. op. at 29.

---

of the report. When asked by the court to describe "how the consideration of [the 2005 Country Report] resulted in something practically different than was before the IJ in the 2004 Report," counsel could identify no way in which Chen was prejudiced by the BIA's action. Thus, assuming without deciding that Chen was deprived of a due process right to respond to 2005 Country Report, the absence of prejudice renders the error harmless.

Because such a review did not occur in this case, we will grant the petition for review,

vacate the final order of removal, and remand for further proceedings.

On remand, the BIA should review the record and issue a disposition showing that

it has considered the evidence both weighing for and against Chen's asylum claim. The

BIA must accept the IJ's factual findings, unless it determines that those findings are

clearly erroneous.[5]  (R. at 87.)  The BIA may, however, review *de novo* whether the

---

[5]While the BIA must accept the IJ's factual findings, it may reach a different legal conclusion based on those findings.  Thus, the BIA may conclude that, even though an IJ found a particular event to be possible, that event is not sufficiently plausible or the harm from it sufficiently severe that a reasonable person in the alien's circumstances would fear it.  *See Huang*, Section III.A.1.b., slip. op. at 20 n.7.

events as forecasted by the IJ qualify as persecution and whether Chen's evidence[6] supports an objectively reasonable fear of persecution based on those events.[7]

## III.    Conclusion

In sum, we will vacate the final order of removal and remand Chen's petition for the BIA to reevaluate her claim to relief in accordance with the standards of review set forth in *Huang*.

---

[6]Chen faults the BIA for rejecting Aird's affidavits on the grounds that, according to the BIA, those affidavits lack a basis in Aird's personal knowledge, rely on outdated sources, and fail to provide specific examples of individuals who have been sterilized. We reject Chen's argument because the BIA may review *de novo* whether evidence submitted by an alien accurately represents the current realities in the alien's home country. *See Yu v. Att'y Gen.*, 513 F.3d 346, 348-49 (3d Cir. 2008) (concluding that the BIA was entitled to reject out-of-date evidence as a basis for an asylum claim when the record contained more recent evidence that contradicted the outdated information). When an alien relies on evidence like Aird's affidavits, which are not based on firsthand observations and rely on information that is several decades old, the BIA may conclude that other evidence, such as the State Department reports, which are compiled based on recent firsthand observations of U.S. diplomats stationed abroad, provide a more reliable description of country conditions. *See id.* (upholding the BIA's conclusion that State Department reports provided more reliable evidence than an affidavit prepared by Aird because Aird's information was several decades old). Thus, the BIA acted within its discretion when it concluded that outdated materials would not raise a fear of persecution in a reasonable alien.

[7]Chen requested withholding of removal and relief under the CAT for essentially the same reasons that she seeks asylum. The BIA did not address those issues independent of asylum, and, on appeal, the parties have not argued that they rest on factual grounds different from the asylum claim. On this record, we are ill-equipped to address the withholding or removal and CAT issues separately and will therefore return them to the BIA for consideration in light of this opinion and of its review of Chen's asylum claim on remand.