

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-21-2006

# Momoh v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3310

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation
"Momoh v. Atty Gen USA" (2006). *2006 Decisions.* Paper 720.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/720

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-3310

———

CHARLES EMERY MOMOH,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

———

On Petition for Review of an Order of the
Board of Immigration Appeals
File No. A28-209-309

———

Argued April 27, 2006

Before: AMBRO and FUENTES, Circuit Judges, and
IRENAS*, District Judge.

(Filed: July 21, 2006)

———

Andre Michniak (Argued)
Michniak, Bezpalko & Associates, P.C.
1420 Walnut Street
Suite 801

---

* Honorable Joseph E. Irenas, Senior District Judge for the
District of New Jersey, sitting by designation.

Philadelphia, PA 19102

ATTORNEY FOR PETITIONER

Peter D. Keisler
    Assistant Attorney General, Civil Division
Richard M. Evans
    Assistant Director
Nancy E. Friedman (Argued)
    Attorney
Office of Immigration Litigation
U.S. Department of Justice
Civil Division
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044

ATTORNEYS FOR RESPONDENT

———

OPINION OF THE COURT

———

FUENTES, Circuit Judge.

Charles Emery Momoh petitions for review of an order of the Board of Immigration Appeals which reversed an Immigration Judge's decision to defer Momoh's removal to his native Liberia under the CAT. The Government challenges this Court's jurisdiction over this matter on the ground that Momoh's claim relates to a matter of fact, rather than a matter of law, and is thus not reviewable in light of the REAL ID Act. We hold that we have jurisdiction over this appeal and that the BIA correctly determined that Momoh has failed to meet his burden of establishing a clear probability that he will be tortured upon returning to Liberia. Accordingly, we deny Momoh's petition.

2

## I.   Background

Momoh is a 26-year-old native and citizen of Liberia. Admitted to the United States as a 14-year-old refugee in September of 1994, he became a lawful permanent resident in December of 1995. At the age of 17, he was convicted of seven counts of robbery, eight counts of possession of a firearm and seven counts of criminal conspiracy. As a result of his conviction, on June 3, 1999, Momoh was issued a Notice to Appear before an Immigration Judge (the "IJ"). The IJ determined that all charges of removability were sustained by clear and convincing evidence. Momoh was therefore deemed to be an "aggravated felon" and thus eligible only for deferral of removal under Article 3 of the United Nations Convention Against Torture and other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), opened for signature Dec. 10, 1984, 1465 U.N.T.S. 85.

Before the IJ, Momoh based his CAT claim upon two assertions: first, that he was likely to be detained and tortured upon his return to Liberia because he would be a criminal deportee and second, that he was likely to be detained and tortured because his father was a well-known figure from a disfavored political party. As to the latter claim, Momoh maintained that his father, James Momoh, had been an official of significance within the regime of Liberian dictator Samuel Doe. James Momoh served in a litany of positions in Doe and prior governments, including Director of Miscellaneous Taxes, Director of Motor Vehicles, Special Assistant to the National Chairman of the National Democratic Party of Liberia (the "NDPL"), city council member of Monrovia, Liberia's capital, and Vice

Chairman of the NDPL for Monseratado County. In this last capacity, he was part of a delegation that was sent to Guinea to appeal to that nation's president for humane treatment of Liberian refugees. It was during that trip that a coup d'etat led by Charles Taylor took place in Liberia. Because of the coup–which violently usurped the regime in which he had played an integral role–James Momoh was unable to return to Liberia out of fear for his safety. He thus sought and was granted asylum in Guinea, but soon moved to Sierra Leone, before ultimately arriving in the United States, where he was granted refugee status.

Because of the Taylor administration's long record of torturing its political opposition, Petitioner Charles Momoh has surmised that, given the likelihood Liberian authorities would associate him with his father upon his return, he too would likely be tortured if he were to be returned to Liberia. In addressing this contention, the IJ first acknowledged that because James Momoh was once a visible political figure, he would likely be recognized if he were to return to Liberia, and possibly executed as a result. The IJ based this latter finding in part on U.S. State Department's 2003 Country Report on Liberia, which detailed a host of human rights violations taking place there at that time, including summary executions, unlawful killings and frequent torture of detainees, all carried out by the government. In light of this human rights record, the IJ concluded that upon <u>his</u> return to Liberia, Charles Momoh would probably be detained as a criminal deportee and more likely than not tortured as a result of

4

his convictions abroad.[1]  (See JA 17a (noting that Liberia "refuses to be a signatory to the U.N. Convention against Torture and [has a] de facto policy authoriz[ing the] use of torture as a commonplace tool of sovereignty.")) The IJ therefore held that notwithstanding Charles Momoh's clear removability, he should not be removed from the United States because he would more likely than not be tortured upon repatriation.

On appeal, the BIA reversed.  It held that as of the date of Momoh's hearing before the IJ, December 2, 2004, the conditions in Liberia were different than those relied upon by the IJ.  Taking administrative notice of the U.S. State Department's 2004 Country Report on Liberia (the "2004 Country Report") pursuant to Zubeda v. Ashcroft, 333 F.3d 463, 479 (3d Cir. 2003), the BIA noted that the Taylor regime had been overthrown "almost 1 ½ years before [Momoh's] hearing before the Immigration Judge" and that there was no record of any torture having taken place under the National Transitional Government of Liberia (the "NTGL"), which had replaced it.  (JA 5a.)  Because the NTGL did not employ torture as a "tool of sovereignty," the BIA reasoned, Momoh "failed to meet his burden of establishing a clear probability that he will be tortured by or with the acquiescence of the [NTGL]" upon his return.  (JA 5a.)  Consequently, the BIA ordered Momoh removed to his native country.

---

[1]Though the IJ thought it likely that Momoh's "familial ties" would be discovered during detention, the IJ concluded that "what, if any[,] impact . . . that will have on his treatment from that point forward just cannot be ascertained." (JA 15a.)  The IJ thus rejected Momoh's claim that his ties to his father rendered him more likely than not to be tortured.

This Petition for Review followed.

## II. Analysis

### A. Jurisdiction

The Government argues first that this Court lacks jurisdiction to hear this matter because Momoh is a criminal alien. Under the REAL ID Act, passed in May of 2005, such aliens are entitled only to review of their removal orders to the extent they are making "constitutional claims" or raising "questions of law." 8 U.S.C. § 1252(a)(2)(D). The Government maintains that because only the factual determination of whether "substantial evidence" supports the BIA's denial of relief is at issue here, this Court lacks jurisdiction. We disagree.

We addressed this very issue in Singh v. Gonzales, 432 F.3d 533 (3d Cir. 2006). There, we held that the mandate of 8 U.S.C. § 1252(a)(2)(D) grants us the authority to review CAT and withholding claims not only to the extent they present constitutional claims or direct questions of law, but where they raise questions relating to the application of law to undisputed facts as well. Id. at 537-38; see also Kamara v. Att'y Gen. of the United States, 420 F.3d 202 (3d Cir. 2005) (noting that we may review "issues of the application of law to fact, where the facts are undisputed and not the subject of challenge") (quotation marks and citation omitted). In such instances, "we exercise plenary review over the BIA's legal determinations, affording Chevron[, U.S.A., Inc. v. NRDC, Inc., 467 U.S. 837, 843 (1984)] deference to its reasonable interpretations of statutes it is charged with administering."

Singh, 432 F.3d at 541-42 (footnote omitted).

Thus, notwithstanding the Government's assertion, the REAL ID Act grants us the authority to review the CAT claims of criminal aliens to the extent they raise constitutional or legal issues, including claims relating to the application of the law to undisputed facts. Here the issue is whether under the undisputed facts of this case, Momoh is eligible for relief under CAT. Thus, we have jurisdiction over this matter.

**B.     Is Momoh Eligible for Relief Under CAT?**

Momoh bears the burden of proving eligibility for protection under CAT. Sevoian v. Ashcroft, 290 F.3d 166, 174-75 (3d Cir. 2002). In order to qualify for such protection, Momoh must establish "'that it is more likely than not that he will be tortured if removed to [Liberia,] the proposed country of removal.'" Id. at 175 (quoting 8 C.F.R. § 208.16(c)(2) (2006)).

Due to the removal of the Taylor regime, the likelihood that Momoh will be tortured upon returning to Liberia is greatly diminished. That nation's fate has changed considerably during the period between when Momoh first came to the United States, in 1994, and December of 2004, when he had his hearing before the IJ. By this latter date Charles Taylor was no longer in power, having been removed and replaced by the NTGL a full 1½ years earlier. This change in power rendered much of the evidence Momoh produced about the conditions in Liberia–primarily articles about the state of affairs under Taylor and in the immediate aftermath of his regime–irrelevant. As the BIA noted, Momoh produced no

evidence of torture taking place by or with the acquiescence of the NTGL in the year proceeding his IJ hearing.

Indeed the BIA took administrative notice of the 2004 Country Report, "which provides that there were no reports of torture by the National Transitional Government of Liberia during 2004."[2] (JA 5a.) Based on this document alone, it is clear that the BIA did not err in concluding that Momoh has failed to establish a probability that he would be tortured upon returning to Liberia.[3]

## III. Conclusion

---

[2]Though this Court may not take judicial notice of information outside of the administrative record pursuant to Berishaj v. Ashcroft, 378 F.3d 314, 330 (3d Cir. 2004), under Zubeda administrative agencies, such as the BIA, may take administrative notice of certain facts within their areas of expertise. U.S. State Department Country Reports fall within the BIA's area of expertise for these purposes. See 8 C.F.R. § 1003.1(d)(3)(iv)(2005) (noting that "[e]xcept for taking administrative notice of commonly known facts such as current events or the contents of official documents, the Board will not engage in factfinding. . .") (emphasis added).

[3]Though Momoh maintains that in reviewing this matter the BIA applied a more stringent standard than "more likely than not," this is clearly not the case. Early in its opinion, the BIA observed that the "sole issue is whether [Momoh] has presented sufficient evidence to establish that he will more likely than not be tortured by the government of Liberia such that he may not be removed to that nation." (JA 4a (emphasis added).) Later, the BIA stated that Momoh bears the burden of proof, under CAT, to show that at the time of the hearing, "he will more likely than not be tortured by" the government that has replaced the Taylor regime. (JA 5a (emphasis added).) Under these circumstances, we disagree with Momoh's contention that the BIA applied too stringent a standard.

8

For the reasons stated above we conclude that we have jurisdiction to hear this matter and that Petitioner Momoh has not made a showing that he is more likely than not to be tortured upon returning to Liberia. We therefore deny Momoh's petition for review.

———