

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-11-2008

# Handoko v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3164

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Handoko v. Atty Gen USA" (2008). *2008 Decisions.* Paper 1764.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1764

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 06-3164

———————

FNU HANDOKO,
                                Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES,
                                Respondent

———————

On Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A79-734-397
(U.S. Immigration Judge: Honorable Miriam K. Mills)

———————

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 5, 2007

Before:  SCIRICA, *Chief Judge*, AMBRO and JORDAN, *Circuit Judges*.

(Filed:   January 11, 2008)

———————

OPINION OF THE COURT

———————

SCIRICA, *Chief Judge*.

        Fnu Handoko petitions for review of the Board of Immigration Appeals' order

dismissing his appeal and affirming an Immigration Judge's denial of his claims for

asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT"). We will deny the petition.

## I.

Handoko, an Indonesian citizen of Chinese ethnicity and Catholic faith, entered the United States on a non-immigrant visa on August 25, 2000, with permission to stay until February 23, 2001. On March 17, 2003, the Government issued a Notice to Appear, which charged him as removable under INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), for overstaying his visa. Handoko conceded the charges of removal but applied for asylum, withholding of removal, and protection under the CAT. He moved in the alternative for voluntary departure. On November 20, 2003, the Immigration Judge (IJ) denied Handoko's claims for relief and granted voluntary departure. The IJ found Handoko not credible, dismissed the asylum claim as untimely, and denied the claims for withholding of removal and protection under the CAT. Handoko appealed, and the BIA reversed in part: it agreed the asylum claim was statutorily barred, but it remanded for further consideration of withholding of removal and protection under the CAT.

On March 3, 2005, on remand, the IJ denied Handoko's remaining claims. First, the IJ assumed Handoko's testimony to be credible but found he was ineligible for withholding of removal because he had not shown past persecution and could not establish a clear probability of future persecution. Second, the IJ found no support for protection under the CAT. Handoko again appealed. The BIA affirmed and briefly

2

identified Handoko's arguments and stated it would not disturb the IJ's findings, but it did not include independent analysis of the claims. This timely petition for review followed.

## II.

Handoko argues the IJ and the BIA erred in finding him ineligible for withholding of removal and protection under the CAT. Handoko also contends the IJ made an improper adverse credibility determination[1] and violated his due process rights by cutting off his direct examination during a hearing.

We have jurisdiction under 8 U.S.C. § 1252.[2] Where, as here, the BIA both adopts

---

[1] Handoko contends the IJ erred as a matter of law in making an adverse credibility determination. We need not reach this argument because the claims at issue in this petition do not depend on an adverse credibility finding. Handoko's petition raises only the withholding of removal and CAT claims, as to which the IJ assumed Handoko to be credible on remand. His petition does not challenge the dismissal of the asylum claim, which occurred in the pre-remand hearing and did depend on an adverse credibility determination. Even if Handoko had raised the asylum issue here, we would lack jurisdiction to consider it. 8 U.S.C. § 1158(a)(3); *Sukwanputra v. Gonzales*, 434 F.3d 627, 634 (3d Cir. 2006). That Handoko's brief summarily asserts the adverse credibility finding violated his right to due process does not alter our analysis. *See Jarbough v. Attorney Gen.*, 483 F.3d 184, 190-91 (3d Cir. 2007).

[2] As a threshold matter, the Government argues Handoko's withholding of removal and CAT claims are not properly before us because he failed to exhaust his administrative remedies. *See* 8 U.S.C. § 1252(d)(1); *Yan Lan Wu v. Ashcroft*, 393 F.3d 418, 422 (3d Cir. 2005). We disagree. The IJ expressly denied both claims, and Handoko's brief to the BIA stated, albeit in a summary manner, that "the IJ erred in denying Respondent's application for asylum, withholding of removal and protection under CAT." In its order, the BIA noted the claims might be waived because Handoko failed to present "meaningful" argument on the claims in his brief. But the BIA did identify both claims and stated that even if they were not waived the BIA would decline to disturb the IJ's findings as to the claims. On this record, the BIA appears to have been on notice of the claims. *Cf. Yan Lan Wu*, 393 F.3d at 422 ("[S]o long as an immigration petitioner makes

(continued...)

3

the findings of the IJ and discusses some of the bases for the IJ's decision, we review the decisions of both the IJ and the BIA. *Xie v. Ashcroft*, 359 F.3d 239, 242 (3d Cir. 2004).

**A.**

We review administrative determinations as to withholding of removal and CAT protection for substantial evidence, which is "more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Senathirajah v. I.N.S.*, 157 F.3d 210, 216 (3d Cir. 1998). The agency's determinations "must be upheld unless the evidence not only supports a contrary conclusion, but compels it." *Abdille v. Ashcroft*, 242 F.3d 477, 483-84 (3d Cir. 2001); 8 U.S.C. § 1252(b)(4)(B). This standard is "extraordinarily deferential." *Abdulrahman v. Ashcroft*, 330 F.3d 587, 598 (3d Cir. 2003).

**1.**

To be eligible for withholding of removal, an alien must show a "clear probability" that if he were removed to the destination country his "life or freedom" would be threatened based on a protected ground (race, religion, nationality, membership in a particular social group, or political opinion). *See* 8 U.S.C. § 1231(b)(3)(A); *I.N.S. v. Stevic*, 467 U.S. 407, 429-30 (1984); *Chen v. Gonzales*, 434 F.3d 212, 216 (3d Cir. 2005).

---

[2](...continued)
some effort, however insufficient, to place the Board on notice of a straightforward issue being raised on appeal, a petitioner is deemed to have exhausted her administrative remedies."). Accordingly, we will proceed to the merits.

An alien may meet his burden either by (1) demonstrating past persecution, which raises a rebuttable presumption of future persecution, or (2) showing a clear probability he will suffer future persecution if removed. 8 C.F.R. § 208.16(b). Persecution is limited to "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom," and it "does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." *Fatin v. I.N.S.*, 12 F.3d 1233, 1240 (3d Cir. 1993). Persecution includes only acts "committed either by the government or by forces that the government is either unable or unwilling to control." *Mulanga v. Ashcroft*, 349 F.3d 123, 132 (3d Cir. 2003).

If the alien does not establish a presumption based on past persecution, and relies instead on showing a clear probability of future persecution, he must show he has a subjective fear of future persecution and that the fear is objectively reasonable. *Zubeda v. Ashcroft*, 333 F.3d 463, 469 (3d Cir. 2003). An alien can satisfy the objective prong by showing he would be singled out for persecution or that "there is a pattern or practice in his or her country of nationality . . . of persecution of a group of persons similarly situated to the applicant" on account of one of the protected grounds. 8 C.F.R. § 208.13(b)(2)(iii)(A). "[T]o constitute a pattern or practice, the persecution of the group must be systemic, pervasive, or organized" and must be "committed by the government or forces the government is either unable or unwilling to control." *Lie v. Ashcroft*, 396 F.3d 530, 537 (3d Cir. 2005) (internal quotation marks omitted).

5

Handoko supported his claims for relief with documentary evidence as to country conditions and his own testimony about three incidents he experienced while living in Surabaya, Indonesia. He testified that when he was six years old, four native Indonesians beat and robbed him, called him "you Chinese," and threatened to kill him if he reported the attack. He also testified that in September of 1989, four or five native Indonesian men, who were pretending to collect donations for charity, intruded into the family home, grabbed Handoko's arm and pointed a knife at his neck, and told him he would be killed if he screamed. Handoko and his brother were alone at home at the time, and they did not resist because they were frightened. The men removed all belongings of value from the house. Before leaving, the men again threatened to kill the boys and made derogatory racial remarks. When Handoko's parents returned, they reported the theft to police, who responded by speculating the family "might have sold" the missing possessions. Finally, Handoko testified he was attacked and robbed of his motorbike on May 14, 1998, during riots directed at ethnic Chinese. He became trapped in a crowd of rioting native Indonesians, and four men shouted derogatory racial names at him. The men chased him and kicked him off the bike, then struck him on the head with a wooden club. The men took away his bike and threatened him. During the attack Handoko was wounded above his left eye and later received stitches at a local hospital. This was his last experience of maltreatment in Indonesia.

Handoko obtained a visa in February of 2000, and he left Indonesia on August 24, 2000. Although his family remains in Surabaya, Handoko claims he plans never to return for fear of persecution on the basis of his Chinese ethnicity and Catholic faith.

Substantial evidence supports the IJ's finding the three incidents Handoko described did not rise to the level of past persecution, and accordingly Handoko was not entitled to a presumption of future persecution.[3] Although assuming Handoko's testimony to be credible,[4] the IJ found the incidents Handoko related did not cumulatively amount to persecution but instead were isolated attacks in the nature of crimes. While the incidents are quite disturbing, we are not free to evaluate their severity *de novo*. A reasonable adjudicator would not be compelled to conclude the attacks, perpetrated by private citizens, were sufficiently severe to constitute persecution. *See Lie,* 396 F.3d at 536 (holding two robberies, "perpetrated by unknown assailants, which resulted only in the theft of some personal property and a minor injury" – a knife wound requiring stitches – did not amount to persecution even assuming they were done on account of ethnicity); *Voci v. Gonzales*, 409 F.3d 607, 615 (3d Cir. 2005) ("[O]ur cases suggest that isolated

---

[3] The record does not support a finding of past persecution on account of religion. Instead, the three incidents Handoko recounted concerned his Chinese ethnicity. In the withholding of removal analysis, therefore, Handoko's religion is relevant only as a ground for finding a clear probability of future persecution.

[4] As explained above, on remand the IJ denied the withholding of removal and CAT claims on the assumption Handoko's testimony was credible. Since we review only those claims, we proceed on the same assumption. *See Toure v. Attorney Gen.*, 443 F.3d 310, 326 (3d Cir. 2006).

incidents that do not result in serious injury do not rise to the level of persecution.").

Handoko urges us to distinguish *Lie*, but we cannot say the incidents Handoko described, taken together, were so much more severe than those described in *Lie* that any reasonable adjudicator would be compelled to conclude they amounted to persecution.

**2.**

The IJ's finding that Handoko failed to establish a clear probability of future persecution was supported by substantial evidence.  Since no evidence suggested Handoko would be singled out for persecution, the IJ proceeded to consider whether there was a pattern or practice of persecution against ethnic Chinese or Christians in Indonesia. In *Lie*, we found no such pattern or practice against Chinese Christians in Indonesia existed because the violence there appears to be "wrought by fellow citizens" and not caused by "governmental action or acquiescence."[5]  *Lie,* 396 F.3d at 537-38.  Handoko's burden on a withholding of removal claim – requiring a "clear probability" of future persecution – is an even "more exacting" showing than a petitioner must meet under the asylum standard we applied in *Lie*.  *See Toure*, 443 F.3d at 317.

Here, the record contained the U.S. Department of State's 2002 Country Report on Human Rights Practices for Indonesia, and the IJ took administrative notice of the 2003 Country Report and the U.S. Department of State's 2004 International Religious Freedom

---

[5] We have since noted *Lie* did not foreclose the argument that newer country reports could establish such a pattern or practice.  *Sukwanputra*, 434 F.3d at 637 n.10.

8

Report (IRFR) for Indonesia. The IJ found the 2003 report "only shows societal and systemic discrimination against the ethnic Chinese." And, the IJ observed, the IRFR "shows no inter-religious significant conflict" outside certain areas of Indonesia to which Handoko showed no connection. The IJ found there are "improved relations between ethnic Chinese and the government" and cited examples. Finally, the IJ found no reason to believe the "civil upheaval" that occurred in Indonesia in 1998 might recur. Accordingly, the IJ found Handoko could not establish a pattern or practice of persecution sufficient to support his withholding of removal claim.

Handoko argues the IJ overlooked evidence in the government reports that supported his claim. He points to a passage in the 2003 Country Report that describes discrimination and harassment against ethnic Chinese as a result of certain government practices and observes that "some Chinese citizens complained that the Government had not done enough to prosecute those responsible for the 1998 violence against them and their businesses." But the passage Handoko cites provides no evidence of pervasive ongoing violence against ethnic Chinese persons. Handoko notes the 2004 IRFR acknowledges some inter-religious violence occurred in several areas of the country and states the government occasionally failed to curtail it.

Substantial evidence supports the IJ's finding that Handoko failed to establish a pattern or practice of persecution. While the 2003 Country Report shows ethnic Chinese continued to experience some forms of harassment and discrimination, the IJ could

reasonably find that treatment did not rise to the level of a pattern or practice of persecution. As to religious status, the IRFR shows some inter-religious violence continued in a number of areas of Indonesia, but the IJ could reasonably find the report as a whole showed "significant conflict" occurred only in areas to which Handoko did not claim a connection. The report does not compel a conclusion that such violence was "systemic, pervasive, or organized," as it must be to constitute a pattern or practice of persecution on the basis of religion. *Lie*, 396 F.3d at 537; *see also Kayembe v. Ashcroft*, 334 F.3d 231, 236 (3d. Cir. 2003) ("Just because the State Department report cuts both ways . . . does not mean that it does not constitute substantial evidence."). Although we do not deny the IJ could have provided a more comprehensive analysis of the reports or that another decisionmaker could disagree with the ultimate conclusion, we cannot say the reports or the balance of the record here compel the conclusion Handoko established a clear probability of persecution on ethnic or religious grounds, should he return to Indonesia. Accordingly, we will deny the petition as to withholding of removal.

**B.**

Handoko's claim for protection under the CAT is without merit. To qualify, an alien must show by a preponderance of objective evidence that he would be tortured if removed to the proposed country. *Sevoian v. Ashcroft*, 290 F.3d 166, 174-75 (3d Cir. 2002) (citing 8 C.F.R. § 208.16(c)(2)). Torture is "(1) an act causing severe physical or mental pain or suffering; (2) intentionally inflicted; (3) for an illicit or proscribed

10

purpose; (4) by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of the victim; and (5) not arising from lawful sanctions." *Auguste v. Ridge*, 395 F.3d 123, 151 (3d Cir. 2005). As with withholding of removal, our review of the denial of a CAT claim is for substantial evidence. *Wang v. Ashcroft*, 368 F.3d 347, 350 (3d Cir. 2004). Accordingly, we will disturb the administrative finding only if the record compels a contrary conclusion. The record here does not, so we will deny the petition as to the claim for CAT protection.

## C.

Finally, Handoko claims the IJ violated his due process rights by interrupting his testimony on direct examination. This claim was not raised before the BIA. An alien must exhaust all administrative remedies available as of right. 8 U.S.C. § 1252(d). Because the BIA generally lacks jurisdiction to hear constitutional claims, in some cases we have found petitioners were not required to exhaust due process claims. *Sewak v. I.N.S.*, 900 F.2d 667, 670 (3d Cir. 1990). On the other hand, we have found some due process claims should have been raised before the BIA because they were "procedural" in nature. *See Khan v. Attorney Gen.*, 448 F.3d 226, 236 (3d Cir. 2006) ("[B]ecause this claim, stripped of its 'due process' label, is a claim of procedural error that could have been addressed by the BIA on appeal, the requirement that [the petitioner] exhaust remedies applies."); *Bonhometre v. Gonzales*, 414 F.3d 442, 448 (3d Cir. 2005) ("[I]t is beyond debate that, had the BIA concluded that the IJ's conduct during the immigration

11

hearing did not fulfill his obligation to completely develop the record under the immigration regulations, it could have remanded for a new trial."). Here, if the BIA had addressed the claim and agreed with Handoko, it could have remanded to the IJ so he could be fully heard.

Even if this claim met an exception to the exhaustion requirement, however, we would find it without merit. Due process in an immigration proceeding entitles an alien to a full and fair hearing and a reasonable opportunity to present evidence. *Singh v. Gonzales*, 432 F.3d 533, 541 (3d Cir. 2006). Here, Handoko argues the IJ deprived him of a full and fair hearing by interrupting his testimony. We disagree. The transcript of the hearing indicates the IJ interrupted Handoko's lawyer's direct examination as to the incidents in Indonesia because Handoko had already testified about the same matter earlier in the hearing and he had recounted the incidents in a written affidavit. The IJ advised Handoko's lawyer he was free to add new material to the record: "If it's something that you can clarify or something you can help him out [sic], please by all means. Go ahead." Indeed, the IJ did not compel Handoko's lawyer to conclude the examination, but only to move onto ground that had not already been covered. The lawyer asked a few questions on another topic, then concluded the examination. Moreover, Handoko does not show, as he must, how the alleged due process violation resulted in substantial prejudice to his case. *Id.* at 541. He contends the IJ "prevent[ed] him from fully testifying," but this conclusory statement fails to identify what favorable

evidence was allegedly kept out of the record as a result of the IJ's interruptions. Accordingly, The IJ's actions in conducting the hearing did not amount to a violation of Handoko's due process right to present his case.

## III.

We will deny the petition and affirm the BIA's order.