

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-24-2008

# Pajollari v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-1800

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Pajollari v. Atty Gen USA" (2008). *2008 Decisions.* Paper 495.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/495

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 07-1800

VANGJUSH PAJOLLARI,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

Petition for Review of an Order of the
Board of Immigration Appeals
(No. A79-452-965)

Before: McKEE and GARTH, Circuit Judges,
and Rodriguez,[*] District Judge

Submitted pursuant to Third Circuit LAR 34.1(a)
May 15, 2008

(Opinion filed: September 24, 2008)

OPINION

McKEE, Circuit Judge.

Vangjush Pajollari petitions for review of a final order of the Board of

Immigration Appeals affirming the decision of an Immigration Judge denying his

_____

[*]The Honorable Joseph H. Rodriguez, Senior District Judge, United States District
Court for the District of New Jersey, sitting by designation.

1

applications for asylum, withholding of removal and relief under the Convention Against Torture ("CAT"). For the reasons that follow, we will deny the petition for review.

## I.

Inasmuch as we are writing primarily for the parties who are familiar with this case, we need not reiterate the factual or procedural background except insofar as may be helpful to our brief discussion. Pajollari is a native and citizen of Albania who attempted to gain admission into the United States by using a false Belgian passport.

Prior to his merits hearing, Pajollari offered numerous supplements to his asylum application. On July 25, 2005, Pajollari appeared for his asylum hearing with yet another supplement. This time it was an undated eleven page, single-spaced document purporting to supplement his existing asylum claim. Counsel for DHS argued that the most recent "supplement" was more in the nature of a new asylum petition than a supplement to the existing one. However, the IJ agreed to consider the supplement over the objection.

Because of the differences between Pajollari's original asylum application and the new supplement, a short recess was called to allow the IJ and counsel for DHS to review the supplement. However, when the hearing resumed, the tape was not running. Therefore, when the IJ resumed recording, the IJ summarized her recollection of what had transpired, including opening statements by Pajollari's counsel and DHS counsel. Neither party objected to the IJ's summary of the opening statements, although

2

Pajollari's counsel stated that she did not recall any mention in Pajollari's submissions of a grenade being thrown. In response, the IJ noted that the grenade was mentioned during the credible fear interview.

The IJ then summarized a short portion of Pajollari's testimony, which was consistent with Pajollari's latest supplement. The IJ recounted that Pajollari's explanation of why his asylum statement was so different from his asylum application was that Pajollari was "not used to being questioned." AR 97-98. The IJ first noticed the tape was not running when Pajollari was asked if the asylum statement and the asylum application were prepared at the same time. At this point, the IJ, on the record, asked Pajollari about the discrepancies between his asylum application, and his credible fear interview and supporting materials:

> Q: All right. Now, your attorney wants to know why [the filings are] so different. The Court wants to know why they're so different.
>
> A: I don't even understand myself why they're different.

AR 99. Pajollari said that the documents were not prepared the same day and that his attorney asked him to "create" a history for himself. *Id*. He said that he did not recall when he finished his statement. When questioned about his girlfriend, Pajollari said that he had lost all contact with her.

In denying Pajollari's claims for relief, the IJ found that Pajollari had not testified credibly. The IJ explained that there were substantial discrepancies that were never

3

adequately explained.  The IJ found that Pajollari had not established a meritorious

asylum claim based on either his alleged attack on account of his membership in the

Democratic Party, or his relationship with Niko, the Socialist Party leader, because he

failed to demonstrate any government complicity or that any abuse was based on

something that was protected under the INA.  She further found that Pajollari could not

establish any well-founded fear of future persecution if he were returned to Albania.

Accordingly, the IJ denied Pajollari all relief from removal.

On appeal to the BIA, Pajollari argued the merits of his asylum claim and

advanced an argument that his due process rights were violated because the transcript of

the hearing contained numerous indiscernible words.  He also alleged that the IJ was

biased based on the IJ's exchange with his counsel about the incident with the grenade.[1]

The BIA adopted and affirmed the IJ's decision, and found that the IJ's adverse

credibility finding was not "clearly erroneous."  *See* 8 C.F.R. § 1003.1(d)(3)(i).  It also

found no evidence of a due process violation by the IJ.  This petition for review

followed.

### III.

Where the BIA both adopts the findings of the IJ and discusses some of the bases

for the IJ's decision, we review the decisions of both the IJ and the BIA.  *Chen v.*

---

[1]Pajollari claimed that a grenade had been thrown through his window, but could not identify the individual who threw it.

*Ashcroft*, 376 F.3d 215, 222 (3d Cir. 2004). Judicial review of immigration matters is limited. *INS v. Ventura*, 537 U.S. 12, 16-18 (2002). The BIA's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." INA § 242(b)(4)(B), 8 U.S.C. § 1252(b)(4)(B); *INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992). Under this deferential standard, we will not reverse the agency's findings "simply because an alternative finding could be supported by substantial evidence." *Yan Lan Wu v. Ashcroft*, 393 F.3d 418, 424-25 (3d Cir. 2005). Instead, the petitioner must establish that the evidence not only supports a contrary conclusion, but compels it. *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002) (citation omitted).

## IV.

The Attorney General may not remove an alien to a country if the alien's life or freedom would be threatened in that country on account of the alien's race, religion, nationality, membership in a particular social group, or political opinion. INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A); *see also INS v. Stevic*, 467 U.S. 407, 413 (1984). To be eligible for this relief, the alien must establish a "clear probability of persecution" on account of one of the foregoing grounds. *Stevic*, 467 U.S. at 413. The burden of proof for establishing eligibility for withholding of removal is more stringent than the burden required for asylum. *Lukwago v. Ashcroft*, 329 F.3d 157, 183 (3d Cir. 2002). The clear probability standard has no subjective component. It requires objective

5

evidence that it is more likely than not that the alien will be subject to persecution upon removal. *See Chen v. Gonzales*, 434 F.3d 212, 216 (3d Cir. 2005).

To qualify for CAT relief, an alien must show that it is more likely than not that he/she would be tortured by the government of the proposed country of removal, or that the government would acquiesce in torture at the hands of others. *Amanfi v. Ashcroft*, 328 F.3d 719, 726 (3d Cir. 2003); 8 C.F.R. § 1208.16(c)(2). Torture is "an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture." 8 C.F.R. § 1208.18(a)(2).

## V.

Pajollari makes two arguments in support of his petition for review. His first argument is that his due process rights were violated because the IJ "based her credibility determination in large part upon sworn testimony that was off-the-record because she failed to restart the tape machine after a recess." Pajollari's Br. 21. (We review due process claims *de novo. Abdulrahaman v. Ashcroft*, 330 F.3d 587, 595-96 (3d Cir. 2003)) The argument is meritless. It is clear that the adverse credibility determination was based on the discrepancies between his testimony, asylum application, and the eleven page supplement that he produced the day of the hearing and the fact that he was not able to explain the discrepancies. The IJ restated what little of Pajollari's testimony had not been recorded and summarized it on the record. Significantly, Pajollari's counsel did not

6

object to the IJ's summary or otherwise attempt to clarify the record. To prevail on a due process challenge to Immigration hearing procedures, an alien must show 'substantial prejudice." *Singh v. Gonzales*, 432 F.3d 533, 541 (3d Cir. 2006). Pajollari suffered no substantial prejudice.

Pajollari's second argument is that the IJ failed to consider potentially corroborative evidence. He contends that the IJ placed particular reliance on the State Department Profile of Asylum Claims for Albania, produced in May 2001, rather than the State Department's 2000 and 2001 Country Reports for Albania. According to Pajollari, the 2001 Asylum Profile concludes that "[t]here is virtually no evidence that individuals are targeted for mistreatment on political grounds," "[t]here is no post-Communist tradition of retribution against political leaders and few instances thereof," and "[t]he Government has neither the means nor the will to carry out systematic persecution." Pajollari's Br. 25. However, Pajollari contends that these conclusions are at odds with the 2000 and 2001 Country Reports, which he claims "cite numerous allegations of violence and intimidation at [Democratic Party] members that often went uninvestigated and unpunished." *Id*. at 26. In Pajollari's view, the Asylum Profile is not proof that his claims lack merit and, therefore, the IJ erred in relying on it in making her credibility findings.

However, as noted above, the IJ's credibility determination rested on Pajollari's inability to satisfactorily explain serious inconsistencies in his testimony, asylum

7

application, and supplement.  Moreover, the IJ's citation to the 2001 Asylum Profile was conducted along with the IJ's citation to the Country Reports and concluded that "there [are] is no serious political conflicts between groups in a systematic organized manner and [the] even show there to be a coalition government, although the Socialist Party remains in power."  The miminal reference to the Asylum Profile could have no effect on the IJ's adverse credibility determination.

## VI.

For all of the above reasons, we will deny the petition for review.