**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2752
_____

QUANGUAN ZHENG,
                          Petitioner
                  v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA,
                          Respondent
_____

On Petition for Review of an Order of
the Board of Immigration Appeals
(Agency No. A216-288-803)
Immigration Judge: Honorable Kuyomars Q. Golparvar
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 18, 2019
_____

Before: SHWARTZ, KRAUSE, and BIBAS, <u>Circuit Judges</u>.

(Filed:  March 20, 2019)
_____

OPINION[*]
_____

SHWARTZ, <u>Circuit Judge</u>.

---

[*]This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Quanguan Zheng petitions for review of the Board of Immigration Appeals'

("BIA") decision denying his claim for relief under the Convention Against Torture

("CAT") and orders denying his continuance requests. Because Zheng did not establish

that it is more likely than not he will be tortured if returned to China, and because he had

not demonstrated good cause for a continuance nor prejudice from its denial, we will

deny the petition.

I

Zheng is a citizen and native of China. In 2015, he entered the United States on a

visitor's visa. In November 2017, Immigration and Customs Enforcement discovered an

Interpol Red Notice for Zheng[1] based on an arrest warrant issued in China for

embezzlement. Zheng was arrested and charged with overstaying his visa in violation of

8 U.S.C. § 1227(a)(1)(B). Zheng sought CAT relief.

In November and December 2017, Zheng and his counsel appeared before an

Immigration Judge ("IJ"). At Zheng's request, the IJ gave the parties until December 27,

2017, to submit additional evidence. Zheng moved to adjourn, seeking more time to

prepare,[2] which the IJ denied, stating that "good cause [was] not shown" and

"Respondent has been detained since mid-November." AR 484. The IJ reminded the

---

[1] Insofar as Zheng asserts that he was unable to fully present his case because portions of the Red Notice are obscured the Notice is in fact legible and only a few letters of certain words at the top of the document are missing because of hole punches.
[2] Zheng also sought to amend his statement to explain his new basis for CAT relief after receiving the Red Notice—his fear of torture to extract a confession for the embezzlement charges. The IJ accepted Zheng's amended statement. Zheng abandoned his original claim that he would face torture based on his conversion to Christianity.

parties that supporting documents were due by December 27, 2017. Zheng submitted no documents by the December 27 deadline.

At the January 5, 2018 merits hearing, Zheng's counsel made another motion to adjourn, explaining that he had not had a chance to speak with Zheng until the prior day and, in the alternative, sought a continuance to consider how the embezzlement charges impact Zheng's claim of fear and to present an expert witness. That day, Zheng also submitted 236 pages of supporting documents. The IJ did not accept these late-filed documents and denied the continuance motion. The IJ explained that no good cause existed to continue the proceeding because Zheng did not provide details about the time and information counsel needed and noted that Zheng had already been detained for several weeks. The IJ also rejected counsel's explanation that he did not have time to meet with his client until the prior day, as he had been counsel of record since November.

The IJ then considered Zheng's testimony and timely-presented documents. Zheng explained that between 2005 and 2015, he worked in a real estate business with friend and partner Zen Chen. Zheng handled the day-to-day business, and Chen was the majority owner to whom Zheng reported. Zheng said that Chen gave him permission to sell property at a discounted price to family members and to use company funds to pay family medical bills. Chen later sued Zheng for misusing company funds. Zheng explained that Chen has a relationship with law enforcement, and they "would use any mean[s] to force [him] to admit a wrongdoing." AR 183.

In June 2015, Zheng learned that Chinese officials initiated an investigation into his activities. He also heard that other individuals involved in the real estate business

3

faced government action. Zheng's wife was arrested and detained for nine to eleven months,[3] and while there, she was exposed to a high-energy lamp and deprived of sleep. Zheng's brother-in-law was sentenced to five years in jail for selling property to Zheng's wife; Zheng's son was arrested, detained for several months, and then released without explanation; and Zheng's step-son's friend was arrested and has been in custody for over a year. Zheng's mother-in-law purchased property from Zheng but no action was taken against her.

In addition to his testimony, Zheng presented the Department of State 2016 Human Rights Report for China. According to the report, torture continues to be a problem "embedded in the criminal justice system," and although coerced confessions are illegal in China, judges rarely exclude them, and interrogators try to conceal their use of torture. AR 599. The report described "torture and coerced confessions of prisoners," carried out by public security bureaus with broad authority as a "serious human rights abuse[]." AR 593.

The IJ denied Zheng's request for CAT relief. The IJ found Zheng credible, but held that despite flaws with the legal process in China, arrest and prosecution alone do not constitute torture, and Zheng did not demonstrate it was more likely than not he would be tortured.[4] Zheng appealed.

The BIA dismissed his appeal, finding the IJ did not err in concluding Zheng did

---

[3] Zheng testified that he did not know whether his wife was charged with embezzlement or whether there was a criminal case against her.

[4] The IJ noted that the conduct to which Zheng's wife was exposed was not "in and of itself . . . equivalent to torture." AR 94.

4

not prove that it is more likely than not he would be subject to torture given that "[n]one of [his] . . . family members or friends has been mistreated, let alone tortured," and that "being arrested and charged with a crime in China does not mean one is likely to be tortured." AR 4. The BIA also found that the IJ did not err in denying the continuance motions because Zheng did not demonstrate either good cause for a continuance or show prejudice from their denial.[5]

Zheng petitions for review.

## II[6]

## A

---

[5] Specifically, the BIA explained that Zheng (1) did "not cite to specific portions" of the untimely documents to show how they supported his torture claim, AR 5, and (2) failed to describe the specific evidence his expert, a professor from Columbia, would offer, beyond saying the expert would testify about Chinese torture. For these reasons, the BIA found that Zheng did not show how the exclusion of this evidence "may have affected the outcome of the case." Id.

[6] The IJ had jurisdiction over Zheng's removal proceedings under 8 U.S.C. § 1229a, and the BIA had jurisdiction under 8 C.F.R. § 1003.1(b). We have jurisdiction over final orders of the BIA under 8 U.S.C. § 1252(a)(1), (a)(2)(D). Our review is typically restricted to the BIA's decision, Abdulai v. Ashcroft, 239 F.3d 542, 549 (3d Cir. 2001), unless "the BIA's opinion 'invokes specific aspects of the IJ's analysis and fact-finding in support of [its] conclusions'" in which case, "we are obliged to review both the decisions of the IJ and the BIA," Green v. Att'y Gen., 694 F.3d 503, 506 (3d Cir. 2012) (alteration in original) (quoting Voci v. Gonzales, 409 F.3d 607, 613 (3d Cir. 2005)).

We review the BIA's legal determinations de novo subject to established principles of deference and review factual determinations under the substantial evidence standard. Wang v. Ashcroft, 368 F.3d 347, 349 (3d Cir. 2004). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Mendoza-Ordonez v. Att'y Gen., 869 F.3d 164, 170 n.15 (3d Cir. 2017). "[I]f no reasonable fact finder could reach the same conclusion as the BIA based on the record then the finding is not supported by substantial evidence." Chavarria v. Gonzalez, 446 F.3d 508, 517 (3d Cir. 2006).

To obtain CAT protection, an applicant must "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal. The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. § 1208.16(c)(2). "Torture" under the CAT "is an extreme form of cruel and inhuman treatment" that is inflicted by or with the acquiescence of a public official and "specifically intended to inflict severe physical or mental pain or suffering." 8 C.F.R. § 1208.18(a)(1), (2), (5).

With respect to the "likelihood of torture, there are two distinct parts to the mixed question: (1) what is likely to happen to the petitioner if removed; and (2) does what is likely to happen amount to the legal definition of torture?" Kaplun v. Att'y Gen., 602 F.3d 260, 271 (3d Cir. 2010). The first question is factual, id., and requires the IJ to review "the evidence and determine[] future events more likely than not to occur," Myrie v. Att'y Gen., 855 F.3d 509, 516 (3d Cir. 2017). The second part of the inquiry is a legal determination as to whether those events meet the definition of torture. Kaplun, 602 F.3d at 271. Accordingly, we review the first determination for substantial evidence, and the second determination de novo. See Kang v. Att'y Gen., 611 F.3d 157, 164 (3d Cir. 2010).

### B

Zheng argues that the IJ and BIA mischaracterized his CAT claim as being based on a fear of arrest and lawful punishment for a crime in China, rather than a fear that torture will be used to extract a confession. He also argues that the IJ's conclusion that he was unlikely to face torture was not supported by substantial evidence given the

6

treatment of his family and the country conditions report. We will address each argument in turn.

1

Contrary to Zheng's argument, the BIA properly framed the nature of Zheng's claim. The BIA stated that Zheng fears "he will be subjected to torture by authorities from the public security bureau in order to gain a forced confession of guilt, wrongful arrest, detention, conviction, and sentence . . . ." AR 3-4. Although the IJ and BIA noted the nature of China's justice system and the protections it affords defendants, they both correctly observed that "being arrested and charged with a crime in China does not mean one is likely to be tortured." AR 4. The IJ and BIA also considered whether Zheng presented evidence showing it was more likely than not that he would be tortured. Indeed, the BIA's analysis focused on the treatment of Zheng's family members and associates as an indication of how he would likely be treated if he is returned to China. Thus, even if the IJ placed greater emphasis on the criminal justice system than on Zheng's circumstances, the BIA understood the basis for Zheng's CAT claim and did not err in how it resolved it.

2

The BIA correctly concluded that Zheng "has not met his burden of proving that it is more likely than not that he would be subjected to torture." AR 4. The BIA relied on the fact that, aside from his wife, "none of [Zheng's] other family members or friends has

been mistreated, let alone tortured," and arrest and being charged for a crime are not torture. AR 4.

These factual determinations are supported by substantial evidence. Even assuming that Zheng's wife was arrested for participating in the embezzlement scheme and further assuming that her exposure to bright lamps and sleep deprivation constitute torture, there is no evidence that others who were arrested or detained in connection with the embezzlement faced similar treatment. Cf. Kang, 611 F.3d at 166 (holding "[t]he record compels the conclusion that if [the petitioner] is removed to China it is more likely than not" she will be tortured where two other individuals named in her arrest warrant and other members of her organization were tortured for assisting North Korean refugees). Therefore, the sole example of his wife's treatment, particularly in light of the treatment of others allegedly involved in the same offense, is insufficient to prove that it is more likely than not Zheng himself would be tortured. See Wang v. Ashcroft, 368 F.3d 347, 350 (3d Cir. 2004) (holding petitioner could not rely on State Department reports regarding Chinese torture of particular groups where he was not included in those groups as a "first-time returning emigrant," and there was no other evidence that he would be tortured).

In sum, the IJ and BIA did not err in finding that Zheng was not entitled to CAT relief.[7]

---

[7] Because the agency did not err in its resolution of the factual question of whether it was more likely than not that Zheng would be tortured upon his return to China, we need not decide whether the techniques he claims are used to obtain a confession meet the legal definition of torture.

Zheng next argues that the IJ abused his discretion by denying his continuance motions and that the denial deprived him of his due process right to a full and fair hearing. Both arguments lack merit.

"The Immigration Judge may grant a motion for continuance for good cause shown." 8 C.F.R. § 1003.29. We review that decision for abuse of discretion.[8] Hashmi v. Att'y Gen., 531 F.3d 256, 260 (3d Cir. 2008). The decision to grant a continuance should be "resolved on a case by case basis according to the facts and circumstances of each case," id. (citation omitted), and may not be based "solely on case-completion goals," id. at 261.

Here, the IJ did not abuse his discretion. His decision to deny a continuance was not based purely on case completion goals or simply because Zheng was detained. Rather, the IJ considered that: (1) counsel received additional time to submit documents when it denied the written motion to adjourn; (2) counsel failed to explain in "sufficient detail" why additional time was needed and what information he sought to obtain during that time, AR 80; (3) counsel was on notice of the Red Notice for a month; and (4) as to his reason for submitting new evidence after the December 27 deadline, namely that he did not meet with Zheng until the day before the January 5 merits hearing, counsel had represented Zheng for the entire case, so there was no excuse for his failure to meet with Zheng sooner. Because there was no good cause for the requested continuance, the IJ's

---

[8] "An IJ's decision should be reversed as an abuse of discretion only if it is arbitrary, irrational or contrary to law." Hashmi, 531 F.3d at 259 (citation omitted).

decision to deny the request was not an abuse of discretion.

The denial also did not deprive Zheng of due process. While "[a]liens are entitled to a full and fair hearing of [their] claims and a reasonable opportunity to present evidence," they "must show substantial prejudice" to prevail on a due process claim. Singh v. Gonzales, 432 F.3d 533, 541 (3d Cir. 2006) (second alteration in original) (internal quotation marks and citations omitted). Zheng had the opportunity to testify, he was permitted to revise the basis for his CAT claim to pursue his assertion that Chinese officials would use torture to obtain a confession to the embezzlement charges, and the IJ and BIA considered the Department of State Human Rights and Country Conditions Report. This report provided extensive detail about the criminal justice system in China, the treatment in detention centers, and techniques used to extract confessions. In this respect, the report confirms Zheng's testimony about the authority of the public security bureau and its activities. Furthermore, Zheng himself acknowledges the value of the report by arguing that it corroborates his claim.[9] Finally, Zheng does not explain how the absence of additional time and the expert witness impaired his ability to present his case. Thus, Zheng has not shown how he was prejudiced by the denial of the continuance motions.

IV

For the foregoing reasons, we will deny Zheng's petition for review.

---

[9] Additionally, the country conditions report captures much of the information contained in the untimely documents Zheng sought to present. Thus, Zheng was not impacted by the absence of these largely redundant documents.